## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

DANIEL J. MERCKX, AS ADMINISTRATOR OF THE ESTATE OF RONALD P. MERCKX, TIMOTHY S. LARAWAY, JR., BARBARA SNASHELL, and CHIGNARD NOELIZAIRE, individually and on behalf of all others similarly situated,

                    Plaintiffs,

      v.

RENSSELAER COUNTY, by and through MARK WOJCIK, in his official capacity as CHIEF FISCAL OFFICER OF RENSSELAER COUNTY, CATTARAUGUS COUNTY, by and through MATTHEW J. KELLER, in his official capacity as TREASURER OF CATTARAUGUS COUNTY, and CITY OF PORT JERVIS, by and through LAURA QUICK, in her official capacity as CITY CLERK-TREASURER of the CITY OF PORT JERVIS, individually and on behalf of all others similarly situated; and the STATE OF NEW YORK,

                    Defendants.

1:23-cv-1354 (MAD/CFH)

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

## <u>COMPLAINT</u>

Plaintiffs Daniel J. Merckx as Administrator of the Estate of Ronald P. Merckx, Timothy S. Laraway, Jr., Barbara Snashell, and Chignard Noelizaire ("Plaintiffs") bring this action individually and on behalf of all others similarly situated ("Plaintiff Class") against Cattaraugus County, by and through Matthew J. Keller, in his official capacity as Treasurer Of Cattaraugus County, Rensselaer County, by and through Mark Wojcik, in his official capacity as Chief Fiscal Officer Of Rensselaer County, and City Of Port Jervis, by and through Laura Quick, in her official capacity as City Clerk-Treasurer of the City Of Port Jervis ("Local Government Defendants"),

1

individually and on behalf of all others similarly situated ("Defendant Class"), and the State of New York, and say:

NATURE OF THE ACTION

1.      This case seeks relief for the unconstitutional practice of local governments in New York foreclosing on and selling homes and keeping the full proceeds, instead of retaining only the amount needed to cover unpaid taxes and related charges.

2.      Acting under color of state law, instead of returning the surplus money to the property owner, who is now square with the local government on the tax debt and bereft of his or her property, the local government took for its coffers the surplus value of the taxpayer's equity.

3.      The Supreme Court of United States held, in its most recently concluded term, that such conduct is unconstitutional. *Tyler v. Hennepin County*, 598 U.S. 631 (2023). The Supreme Court unanimously held that the government's retention of surplus proceeds without adequate means for the foreclosed property owners to recover the surplus proceeds, is a taking of private property for public use without just compensation.

4.      Local Government Defendants' retention of surplus proceeds in excess of Plaintiffs' unpaid taxes and associated charges violates the U.S. and New York Constitutions' prohibition on the taking of private property for public use without just compensation as well as the prohibition on the imposition of excessive fines.

5.      Plaintiffs did not pay their property taxes — at first. While Plaintiffs' life circumstances may differ, whether they be elderly, poor, sick and dying, from broken-up families, suffering substance disorders, had hard luck or good luck, or if they just decided to give up their property, it makes no difference. What they have in common is they lost their equity to an unconstitutional taking. The local governments took their property and took the taxes. That was allowed. The local governments did not stop there, though. They also took the surplus proceeds,

2

as provided under New York Real Property Tax Law, Article 11. *See, e.g.*, <u>Hoge v. Chautauqua</u> <u>Cnty.</u>, 173 A.D.3d 1731, 1732 (2019) (concluding that former property owners "are not entitled to surplus proceeds under [Real Property Tax Law] article 11") or under color of other New York state or local laws. That is the wrong this case would remedy.

6.      This action seeks to certify a plaintiff class of New York property owners and those with an ownership interest in property whose property interests and surplus proceeds were taken and to certify a defendant class of New York local governments who took their property and kept the surplus proceeds.

7.      Plaintiffs and the proposed Plaintiff Class seek just compensation for the taking of their private property and restitution of excessive fines. Plaintiffs assert claims for violation of the Takings Clause of the Fifth Amendment to the U.S. Constitution prohibiting takings without just compensation under 42 U.S.C. §1983, violation of the Takings Clause, Article I, §7 of the New York Constitution, a declaratory judgment that Article 11 of New York's Real Property Tax Law, and more specifically Real Property Tax Law §1136 violates the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution, unjust enrichment, money had and received, an equitable accounting, and inverse condemnation, together with prejudgment interest, costs, and attorneys' fees.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction of this action as the federal claims in this Complaint arise under the Fifth Amendment, Eighth Amendment, and Fourteenth Amendment to the United States Constitution and, as a result, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331.

9. This Court has supplemental jurisdiction over the legal and equitable claims in this Complaint arising under New York law pursuant to 28 U.S.C § 1367 since those claims arise out of a common nucleus of operative facts with the federal claims that are within the Court's original jurisdiction.

10. Venue of this action is properly laid in the United States District Court for the Northern District of New York, pursuant to 28 U.S.C. §§1391(b)(1) and (2), as, among other factors, Defendants Rensselaer County and the State of New York are within its geographic jurisdiction. A substantial part of the events that give rise to the claims occurred here, and certain property that is the subject of the action is located here, including the properties in Rensselaer County formerly owned by Daniel J. Merckx and Timothy S. Laraway, Jr.

**THE PARTIES**

A. <u>**PLAINTIFFS**</u>

<u>**Daniel J. Merckx, Administrator of the Estate of Ronald P. Merckx**</u>

11. Plaintiff Daniel J. Merckx is a resident of East Greenbush, NY ("Plaintiff Merckx"), and was duly appointed as the Administrator of the Estate of his late brother, Ronald P. Merckx ("Merckx Estate").

12. The Merckx Estate included the property located at 3 Pinewood Ave, East Greenbush, Rensselaer County, NY 12061 ("Merckx Property").

13. Rensselaer County, through its Chief Fiscal Officer, currently Mark Wojcik, foreclosed on the Merckx Property due to around $37,707 in taxes, fees, and/or penalties owed.

14. Ronald Merckx died on July 25, 2018. Rensselaer County then sold the Merckx Property for $80,000 on or around August 31, 2018.

15. Rather than return the approximately $42,293 in surplus proceeds to the Estate of Ronald P. Merckx, Rensselaer County retained the surplus proceeds.

16.    Rensselaer Couty retained and distributed $42,293 in surplus proceeds pursuant to N.Y. Real Prop. Tax Law § 1136.

17.    Rensselaer County offered no process for the Estate of Ronald Merckx to regain any of the surplus proceeds from the tax foreclosure sale of the Merckx Estate's former property.

18.    To this day, Rensselaer County has not refunded the surplus proceeds to Plaintiff Merckx.

**Timothy S. Laraway, Jr.**

19.    Plaintiff Timothy S. Laraway, Jr. is a resident of the Village of East Nassau, Town of Nassau, Rensselaer County, NY.

20.    Mr. Laraway formerly owned the property located at 3135 U.S. Highway, Nassau, Rensselaer County, NY 12123 ("the Laraway Property") in the Town of Nassau and Rensselaer County.

21.    Rensselaer County, through its Chief Fiscal Officer, currently Mark Wojcik, foreclosed on the Laraway Property due to around $8,810 in taxes, fees, and/or penalties owed to Rensselaer County and the Town of Nassau.

22.    Rensselaer County then sold the Laraway Property for $29,000 on or about October 30, 2017.

23.    Rather than return approximately $20,190 in surplus proceeds to Mr. Laraway, Rensselaer County retained the surplus proceeds.

24.    Rensselaer County retained and distributed approximately $20,190 in surplus proceeds pursuant to N.Y. Real Prop. Tax Law § 1136.

25.    Rensselaer County offered no process for Mr. Laraway to regain any of the surplus proceeds from the tax foreclosure sale of his former property.

26.    To this day, Rensselaer County has not refunded the surplus proceeds to Mr. Laraway.

**Barbara Snashell**

27.    Plaintiff Barbara Snashell, formerly Barbara Cortright, is a resident of Springville, NY.

28.    Plaintiff Barbara Snashell and her late husband formerly owned 9152 Route 219, West Valley, NY 14171 in Cattaraugus County ("the Snashell Property"). When her husband died, she became sole owner of the property.

29.    Cattaraugus County, through its Treasurer Matthew J. Keller, obtained a judgment of foreclosure on the Snashell Property due to around $11,846 in taxes, fees, and/or penalties owed and conveyed the property from Ms. Snashell to Cattaraugus County.

30.    In 2021, Cattaraugus County then sold the Snashell Property for $60,400.

31.    Rather than return approximately $48,554 in surplus proceeds to Mrs. Snashell, Cattaraugus County retained all proceeds of the sale.

32.    Cattaraugus County retained and distributed $48,554 in surplus proceeds pursuant to N.Y. Real Prop. Tax Law § 1136.

33.    Cattaraugus County offered no process for Mrs. Snashell to regain any of the surplus proceeds from the tax foreclosure sale of her former property.

34.    To this day, Cattaraugus County has not refunded the surplus proceeds to Mrs. Snashell.

**Chignard Noelizaire**

35.    Plaintiff Chignard Noelizaire is a resident of Newburgh, NY.

36.     Mr. Noelizaire formerly owned the property at 185 Ball Street, Port Jervis, NY 12771 ("the Noelizaire Property").

37.     Acting by and through its City Clerk-Treasurer, currently Defendant Laura Quick, in her official capacity, the City of Port Jervis foreclosed on the Noelizaire Property, via warrant for the collection of City tax issued by the Common Council of the City, due to around $2,563 in taxes, fees, and/or penalties owed and conveyed the Noelizaire Property to the City of Port Jervis.

38.     The City of Port Jervis then sold the Noelizaire Property to a third party for $26,500.

39.     Rather than return the approximately $23,937 of surplus proceeds to Mr. Noelizaire, the City of Port Jervis retained the surplus proceeds.

40.     The City of Port Jervis retained and distributed the $23,937 of surplus proceeds pursuant to Article VI of the City Charter of Port Jervis.

41.     The City of Port Jervis offered no process for Mr. Noelizaire to regain any of the surplus proceeds from the tax foreclosure sale of his former property.

42.     To this day, the City of Port Jervis has not refunded the surplus proceeds to Mr. Noelizaire.

### B.     **DEFENDANTS**

43.     Defendant Rensselaer County is a political subdivision of the State of New York.

44.     Defendant Mark Wojcik, named in his official capacity as Chief Fiscal Officer of Rensselaer County, is the "enforcing officer" for Rensselaer County under New York Real Property Tax Law, § 1102.

45.     Defendant Cattaraugus County is a political subdivision of the State of New York.

46.    Defendant Matthew J. Keller, named in his official capacity as Treasurer of Cattaraugus County, is the "enforcing officer" for Cattaraugus County under New York Real Property Tax Law, § 1102.

47.    Defendant City of Port Jervis is a political subdivision of the State of New York, and is located in Orange County, New York.

48.    Defendant Laura Quick is the current City Clerk-Treasurer of the City of Port Jervis and is the enforcing officer of property tax collections in the City of Port Jervis.

49.    Defendant the State of New York is one of the 50 U.S. States. The State of New York maintained, enforced, and permitted New York counties and other local governments, including without limitation Local Government Defendants and Defendant Class, to enforce one or more statutes or local laws to retain and distribute surplus proceeds of tax foreclosures in violation of the United States and New York constitutions.

50.    Defendants Cattaraugus County and Rensselaer County follow the same process regarding the retention and distribution of surplus proceeds that N.Y. Real Prop. Tax Law § 1136 requires. The City of Port Jervis follows a process established in its City Charter regarding the retention and distribution of surplus proceeds.

51.    Enforcing officers in local governments of the State of New York are authorized pursuant to the laws of the State of New York to enforce the payment and collection of property taxes in accordance with N.Y. Real Prop. Tax Law § 1136 or local law. All Defendants are juridically related and a single resolution would be expeditious.

## GENERAL ALLEGATIONS

52.    From at least May 25, 2017 to the present ("the Class Period"), Local Government Defendants and members of Defendant Class sold real property in which Plaintiffs and members of Plaintiff Class had an interest, for non-payment of taxes or other local government charges.

Local Government Defendants and members of Defendant Class received as proceeds of the sales a greater sum than the debt owed to the tax authorities, and offered no opportunity for the taxpayer to recover the excess value.

53.    In some cases, during the Class Period, Local Government Defendants and members of Defendant Class seized and retained ownership of real property in which Plaintiffs and members of Plaintiff Class had an interest, for non-payment of taxes or other local government charges, and received greater value than the debt owed to the tax authorities, and offered no opportunity for the taxpayer to recover the excess value.

54.    Until the U.S. Supreme Court's decision in *Tyler*, Plaintiffs and Plaintiff Class were not on notice, could not have been on notice, and should not, in justice and equity, be deemed to have been on notice of the existence of the claims asserted herein.

55.    The ongoing failure of Local Government Defendants and Defendant Class to refund the surplus proceeds of foreclosure sales to Plaintiffs and Plaintiff Class: (1) constitutes a continuing violation of the U.S. and New York constitutions, and (2) constitutes continuing wrongful conduct giving rise to the other claims the Plaintiffs and Plaintiff Class assert herein.

56.    With each passing day that Local Government Defendants and Defendant Class retain the surplus proceeds and do not refund the surplus proceeds to Plaintiffs and Plaintiff Class: (1) a new violation arises of the U.S. and New York constitutions, and (2) the other claims Plaintiffs' and Plaintiff Class assert herein also newly arise.

57.    The Supreme Court of the United States has declared unconstitutional the practice of local government tax authorities retaining surplus proceeds of tax foreclosures and tax sales.

58.    The Government may not "forc[e] some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

59.    To that end, on May 25, 2023, the United States Supreme Court held that the retention of surplus proceeds following the sale of a foreclosed-upon property constitutes a "classic taking in which the government directly appropriates private property for its own use." *Tyler v.*, 598 U.S. at 639. The Supreme Court explained that State law cannot "sidestep the Takings Clause by disavowing traditional property interests in assets it wishes to appropriate," *Id.* at 638.

60.    New York's Real Property Tax Law, Chapter 50-a, Article 11 ("Article 11") establishes a procedure whereby Local Government Defendants may retain proceeds from the sale of foreclosed property in excess of taxes owed, in violation of the principle announced in *Tyler*.

61.    Under N.Y. Real Prop. Tax Law § 1136[3], which is still on the books, the taxing entity takes possession of the foreclosed-upon property in fee simple, "and all persons . . . who may have had any right, title, interest, claim, lien or equity of redemption in or upon such parcel, shall be barred and forever foreclosed of all such right, title, interest, claim, lien or equity of redemption."

62.    In other words, when an individual's property is foreclosed upon under this procedure, the individual loses all right to the property, including any property value in excess of the taxes owed by the individual to the taxing entity. *See, e.g.*, <u>Hoge</u>, 173 A.D.3d at 1732.

63.    Certain taxing entities have opted not to implement the procedure set forth in Article 11. However, many of these entities enact and followed analogous local laws, procedures and practices whereby they seize and sell foreclosed-upon property and retain the proceeds of the sale in excess of taxes owed.

10

64.    Both the Fifth Amendment to the United States Constitution and Article I, Section 7 of the New York Constitution declare the same prohibition *verbatim*: "Private property shall not be taken for public use without just compensation."

65.    The New York and United States Constitutions also prohibit the imposition of excessive fines. The Eighth Amendment of the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed." Similarly, Article I, Section 5 of the New York Constitution provides: "Excessive bail shall not be required nor excessive fines imposed, nor shall cruel and unusual punishments be inflicted, nor shall witnesses be unreasonably detained."

66.    The Fourteenth Amendment to the United States Constitution makes the Fifth and Eighth Amendments of the United States Constitution applicable to States. It provides, in pertinent part, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

## CLASS ACTION ALLEGATIONS

67.    Plaintiffs respectfully request that this Honorable Court enter an Order certifying this action as a Class Action on behalf of a proposed Plaintiff Class and against a proposed Defendant Class.

### **Plaintiff Class**

68.    Plaintiffs request that this Court enter an Order certifying this action as a Plaintiff Class Action or Plan pursuant to Rule 23(a), 23(b)(1)(A), (B), 23(b)(2), and 23(b)(3).  Plaintiffs request the Court to certify a Plaintiff Class defined as follows:

> All Persons and entities, their heirs and successors, who owned or had an ownership interest in real property that a Local Government Defendant or

member of Defendant Class seized to satisfy unpaid real estate taxes and associated charges and that was subsequently: (1) sold during the Class Period for more than the amount necessary to satisfy such taxes and associated charges and the local government tax authority offered no opportunity for the taxpayer to recover the surplus proceeds; or (2) retained by the local government tax authority during the Class Period and the value of the retained property exceeds such taxes and associated charges and the local government entity offered no opportunity for the taxpayer to recover the excess value.

Excluded from Plaintiff Class are Defendants, the presiding Judge, and Court staff assigned to this case, the U.S. Department of Treasury, and the U.S. Internal Revenue Service. Plaintiffs reserve the right to modify or amend Plaintiff Class Definition, as appropriate, during the course of this litigation. Plaintiffs further request that the Court appoint counsel for the named Plaintiffs as Plaintiff Class counsel.

69.     The members of Plaintiff Class are so numerous that their individual joinder is impracticable. On information and belief, members of Plaintiff Class number at least in the thousands. The precise number of members of each of Plaintiff Class and their current addresses are presently unknown to Plaintiffs but may be ascertained from County and other local government property and tax records. Class members may be notified of the pendency of this action by mail, email, text, Internet postings, and/or publication.

70.     Common questions of law and fact exist as to all members of Plaintiff Class and predominate over questions affecting only individual Class members. Such common questions of law or fact include:

a)      Whether Local Government Defendants and Defendant Class have been unjustly enriched by retaining Surplus Proceeds following the sale of foreclosed-upon properties;

b)      Whether Local Government Defendants and Defendant Class committed a taking of Plaintiffs' and the Plaintiff Class Members' properties without just compensation in violation of the Fifth Amendment of the United States Constitution;

c)      Whether Local Government Defendants and Defendant Class's taking of Plaintiffs' and Plaintiff Class members' properties for public use was without "compensation first assessed and tendered" in violation Article I, Section 7 of the New York Constitution;

d)      Whether Local Government Defendants and Defendant Class imposed an excessive fine on Plaintiffs and Plaintiff Class in violation of the Eighth Amendment to the United States Constitution;

e)      Whether Local Government Defendants and Defendant Class imposed an excessive fine on Plaintiffs and Plaintiff Class in violation of Article I, Section 5 of the New York State Constitution;

f)      Whether N.Y. Real Prop. Tax Law § 1136[2](d), on its face or as applied violates the Fifth, Eighth, or Fourteenth Amendments to the U.S. Constitution and should be declared unconstitutional;

g)      Whether local laws, procedures or practices on their face or as applied violate the Fifth, Eighth, or Fourteenth Amendments to the U.S. Constitution; and

h)      Whether Local Government Defendants and Defendant Class are liable for inverse condemnation of Plaintiffs' and Plaintiff Class members' property.

71.      Plaintiffs' claims are typical of the claims of the other members of Plaintiff Class, because, among other reasons, Plaintiffs and all Class Members of Plaintiff Class suffered the same type of injury, namely, each Local Government Defendant or member of Defendant Class retained all surplus proceeds of the sale of their former properties and distributed the surplus proceeds pursuant to N.Y. Real Prop. Tax Law § 1136[2](d). Plaintiffs are adequate class representatives because their interests do not conflict with the interests of the other class members they seek to represent.  Moreover, they have retained counsel competent and experienced in class action litigation, including tax surplus takings litigation specifically, and their counsel will prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of Plaintiff Class.

72.      A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and members of Plaintiff Class individually are relatively small compared to the burden and expense that would be required to separately litigate their claims against Defendants, so it would be uneconomical and impracticable for many Plaintiff Class members to individually seek redress for the wrongful conduct. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

**Defendant Class**

73.     Plaintiffs also request the Court to certify this action as a defendant class action pursuant to Rule 23(a), 23(b)(1)(A),(B), 23(b)(2) and 23(b)(3), and to appoint counsel for Local Government Defendants as Defendant Class counsel.

74.     Plaintiffs request certification of "Defendant Class" defined as follows:

> All local government tax authorities in New York that either: (1) sold real property for non-payment of taxes or other local government charges during the Class Period for a sum greater than the debt and associated charges owed to the tax authorities, and offered no opportunity for the taxpayer to recover the surplus proceeds; or (2) took ownership of and retained real property for non-payment of taxes or other local government charges during the Class Period worth more than the debt and associated charges owed to the tax authorities, and offered no opportunity for the taxpayer to recover the excess value.

Plaintiffs reserve the right to modify or amend the Defendant Class definition, as appropriate, during the course of this litigation.

75.     The members of Defendant Class acted in a uniform manner pursuant to N.Y. Real Prop. Tax Law § 1136[2](d) and other state and local laws in New York when they retained surplus proceeds and offered no opportunity for the taxpayer to recover the excess value.

76.     Individual joinder is impracticable compared to establishing a Defendant Class consisting of the numerous local governments. Prosecuting separate actions by or against the individual Defendant Class members could establish incompatible standards of conduct. Defendant Class members may be notified of the pendency of this action by mail, email, text, Internet postings, and/or publication.

77.     Common questions of law and fact exist as to all members of Defendant Class and predominate over questions affecting only individual Defendant Class members. Such common questions of law or fact include:

a)      Whether Local Government Defendants and Defendant Class have been unjustly enriched by retaining surplus proceeds following the sale of foreclosed upon properties;

b)      Whether Local Government Defendants and Defendant Class committed a taking of Plaintiffs' and Plaintiff Class members' properties without just compensation in violation of the Fifth Amendment of the United States Constitution;

c)      Whether Local Government Defendants' and members of Defendant Class's takings of Plaintiffs' and Plaintiff Class Members' properties for public use was without "compensation first assessed and tendered" in violation Article I, Section 7 of the New York Constitution;

d)      Whether Local Government Defendants and Defendant Class imposed an excessive fine on Plaintiffs and Plaintiff Class Members in violation of the Eighth Amendment to the United States Constitution;

e)      Whether Local Government Defendants and Defendant Class imposed an excessive fine on Plaintiffs and Plaintiff Class Members in violation of the New York State Constitution;

f)      Whether N.Y. Real Prop. Tax Law § 1136[2](d), on its face or as applied by Local Government Defendants and Defendant Class violates the Fifth, Eighth, or Fourteenth Amendments to the U.S. Constitution;

g)      Whether local laws, procedures or practices on their face or as applied by Local Government Defendants and Defendant Class violate the Fifth, Eighth, or Fourteenth Amendments to the U.S. Constitution; and

h)      Whether Local Government Defendants and Defendant Class are liable for inverse condemnation.

78.    Defendants' defenses are typical of the defenses of the other members of Defendant Class. Plaintiffs and all Class Members of Plaintiff Class suffered the same type of injury, namely, Defendants and each member of Defendant Class retained all surplus proceeds from the sale (or retention) of the members of the Plaintiffs' and Plaintiff Classes former properties and distributed the surplus proceeds pursuant to either: (1) N.Y. Real Prop. Tax Law § 1136[2](d); or (2) other state and local law, procedure or practice.

79.    Defendants and each member of Defendant Class acted consistently and uniformly in retaining the surplus proceeds or value pursuant to either: (1) N.Y. Real Prop. Tax Law § 1136[2](d), which mandates a set of non-discretionary retention and distribution procedures that apply to surplus proceeds; or (2) other state or local law, procedures or practices that authorized local governments to retain and distribute surplus proceeds or value.

80.    Defendants are adequate Defendant Class representatives because their interests do not conflict with the interests of Defendant Class Members they represent. Each County retains and distributes surplus proceeds from property foreclosed upon within that County. The distribution of the surplus proceeds remains within each County and does not conflict with distribution within other counties. Defendants share the same defenses regarding such distribution.

81.    Members of the proposed Defendant Class are too numerous to be individually named.  On information and belief, during the Class Period, several hundred local government entities in New York were authorized by New York state or local law to levy and collect property taxes, foreclose on real estate to collect back taxes and associated charges and retain surplus proceeds or value.

82.     It would be impracticable and an undue burden on the courts, Plaintiffs and Plaintiff Class, and members of Defendant Class to litigate and try several thousand individual actions against every local government tax authority in New York, rendering it uneconomical for Plaintiffs and Plaintiff Class to obtain just compensation for the unconstitutional takings that Local Government Defendants and the members of Defendant Class have perpetrated.

83.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.

84.     Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the Class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**COUNT I**

**(AGAINST LOCAL GOVERNMENT DEFENDANTS AND DEFENDANT CLASS)**

**VIOLATION OF THE UNITED STATES CONSTITUTION'S FIFTH AMENDMENT PROHIBITION ON TAKINGS WITHOUT JUST COMPENSATION, 42 U.S.C. § 1983**

85.     Plaintiffs reallege all previous paragraphs as if fully set forth herein.

86.     Known colloquially and jurisprudentially as the "Takings Clause" of the United States Constitution, a portion of the Fifth Amendment to the United States Constitution provides that "nor shall private property be taken for public use, without just compensation." U.S. Const., Amend. V.

87.     The Takings Clause applies to all States of the United States of America through the Fourteenth Amendment, and by extension their subdivisions, instrumentalities, and departments, including Local Government Defendants and Defendant Class.

18

88.    The purpose of the Takings Clause is to prevent the government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.

89.    Local Government Defendants' retention of the surplus proceeds amounts to a taking of private property for public use without just compensation. *See Tyler*, 598 U.S. at 639.

90.    A legislature cannot constitutionally enact a law that effects a taking of private property without just compensation. *See, e.g.*, *Tyler*, 598 U.S. at 638.

91.    Plaintiffs and members of the Plaintiff Class had a cognizable property interest in their respective parcels and have a cognizable property interest in the surplus proceeds that the Fifth Amendment to the United States Constitution and its Takings Clause protects.

92.    Defendants physically took Plaintiffs' and Plaintiff Class members' real property and physically took, now possess, and refuse to tender and deliver to Plaintiffs and Plaintiff Class members their surplus proceeds or value.

93.    Defendants have expended or will expend the surplus proceeds from the auction or sale of real property belonging to Plaintiffs and Plaintiff Class members. These proceeds have not been used for a valid public use.

94.    In the alternative, some or all of the proceeds have been used for a valid public use, but Plaintiffs and members of the Plaintiff Class have not received just compensation and Plaintiffs and members of the Plaintiff Class have been and would be forced to bear public burdens alone which, in all fairness and justice, the public as a whole should bear.

95.    Defendants did not offer to pay just compensation before, during, or after taking the property of Plaintiffs and the Plaintiff Class.

96.    Defendants have not provided Plaintiff or the Plaintiff Class members adequate procedure to seek just compensation for the taking of their surplus proceeds and have therefore violated Plaintiffs' and the Plaintiff Class members' rights to due process that the Fifth Amendment guarantees. *Cf. id.* (finding that plaintiffs adequately alleged that no process was provided to enable foreclosed-upon landowners to recover surplus equity).

97.    Plaintiffs' and Plaintiff Class members' claims asserted herein before this Court are mature and ripe.

98.    Plaintiffs and Plaintiff Class members have suffered damages. The Takings Clause requires Defendants to pay Plaintiffs and Plaintiff Class members money damages that constitute just compensation for the taking of their private property.

99.    Plaintiffs' and Plaintiff Class members' constitutional right to just compensation for government seizure of their property for public purposes is a fundamental right deeply rooted in this country's legal traditions and central to the concept of ordered liberty. Defendants conduct has deprived Plaintiff and Plaintiff Class members of that fundamental right.

100.    It is the policy, custom and practice of Local Government Defendants and Defendant Class to use for public purposes and not deliver or tender to Plaintiffs or Plaintiff Class members their property that Local Government Defendants and Defendant Class took.

101.    Local Government Defendants and Defendant Class acted under color of state law.

102.    While acting under color of state law, Local Government Defendants and Defendant Class deprived Plaintiffs and Plaintiff Class of a federal constitutional right and committed a taking from them without just compensation.

103.    Local Government Defendants and Defendant Class are persons under 42 U.S.C. § 1983.

104.   Local Government Defendants' and Defendant Class's actions have caused Plaintiffs and Plaintiff Class to suffer material damages pursuant to 42 U.S.C. § 1983. Local Government Defendants and Defendant Class are liable to pay Plaintiffs and Plaintiff Class members money damages for their injuries suffered.

## COUNT II

**(AGAINST LOCAL GOVERNMENT DEFENDANTS AND DEFENDANT CLASS)**

**VIOLATION OF THE TAKINGS CLAUSE, ARTICLE I § 7, OF THE NEW YORK CONSTITUTION**

105.   Plaintiffs reallege all previous paragraphs as if fully set forth herein.

106.   Article I, Section 7 of the New York Constitution provides that "Private property shall not be taken for public use without just compensation."

107.   The guarantees of Article I, Section 7 of the New York Constitution are generally coextensive with the Takings Clause of the United States Constitution.

108.   For the same reasons why Defendants' actions violate the Takings Clause of the United States Constitution, their conduct also violates Article I, Section 7 of the New York Constitution.

109.   The Local Government Defendants' takings of Plaintiffs' and the Plaintiff Class members' property without just compensation injured Plaintiff and the Plaintiff Class members, and they are entitled to just compensation and other relief.

## COUNT III

**(AGAINST LOCAL GOVERNMENT DEFENDANTS AND DEFENDANT CLASS)**

**VIOLATION OF THE UNITED STATES CONSTITUTION'S EIGHTH AMENDMENT PROHIBITION OF EXCESSIVE FINES, 42 U.S.C. § 1983**

110.   Plaintiffs reallege all previous paragraphs as if fully set forth herein.

111.     The Eight Amendment to the United States Constitution prohibits the imposition of excessive fines and applies to the states through the Fourteenth Amendment. U.S. Const. amends. VIII, XIV.

112.     The determination of whether a financial penalty is excessive under the Eighth Amendment is a two-step inquiry: (1) Is the payment or forfeiture at issue a "fine"?, meaning that it is punitive in nature and not purely "remedial"; and (2) Is the fine "grossly disproportional" to the underlying offense?

113.     A fine may be punitive where it imposes an economic penalty on the person for that person's actions and seeks to deter future wrongdoing. By contrast, a fine is remedial if it is intended only to compensate the government for lost revenue.

114.     The court must balance four factors to determine if a fine is grossly disproportional to the underlying offense: (1) the essence of the underlying offense; (2) whether the Plaintiffs fit into the class of persons for whom the statute was principally designed; (3) the maximum sentence and fine that could have been imposed; and (4) the nature of the harm caused by the Plaintiffs' conduct. Ultimately, whether a fine is excessive involves solely a proportionality determination.

115.     Plaintiffs and Plaintiff Class assert a viable claim for violation of the Excessive Fines Clause where the Local Government Defendants and Defendant Class seized and retained plaintiffs' surplus equity through *in rem* foreclosure proceedings for non-payment of property taxes.

116.     Confiscating the entire value of Plaintiffs property and property of Plaintiff Class, including the excess or surplus equity in Plaintiffs' property, because of non-payment of  amounts of real estate taxes less than the sale price of the properties, or less than the value of properties that

Local Government Defendants and Defendant Class retained and did not sell, is an excessive fine under the Eighth Amendment to the United States Constitution.

117.    Plaintiffs and Plaintiff Class have suffered damages in an amount to be proven at trial, which damages include the surplus proceeds.

118.    The unlawful excessive fines under the United States Constitution have injured and damaged Plaintiffs and the Plaintiff Class and they are entitled to relief as a result.

## COUNT IV

**(AGAINST LOCAL GOVERNMENT DEFENDANTS AND DEFENDANT CLASS)**

**VIOLATION OF NEW YORK'S PROHIBITION ON EXCESSIVE FINES, ARTICLE I §5 OF THE NEW YORK CONSTITUTION**

119.    Plaintiffs reallege all previous paragraphs as if fully set forth herein.

120.    Article I, Section 5 of the New York State Constitution prohibits the imposition of excessive fines.

121.    New York's Excessive Fines Clause, N.Y. Const. Article I § 5, requires the same analysis as the federal clause and provides no greater protection. *Grinberg v. Safir*, 694 N.Y.S.2d 316, 326-27 (1999); *see also* Dorce, 608 F. Supp. 3d at 143-44.

122.    For the same reasons Defendants' actions violate the Excessive Fines Clause of the United States Constitution, their conduct also violates Article I, Section 5 of the New York State Constitution.

123.    Plaintiffs and those similarly situated have suffered damages in an amount to be proven at trial, which damages include the surplus proceeds.

## COUNT V

**(AGAINST DEFENDANT STATE OF NEW YORK )**

**DECLARATORY JUDGMENT THAT N.Y. REAL PROPERTY TAX LAW § 1136[2](D)
VIOLATES THE FIFTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION**

124.　Plaintiffs reallege all previous paragraphs as if fully set forth herein.

125.　In material part, the Declaratory Judgments Act, 28 U.S.C. § 2201 (a), provides that "[i]n a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

126.　On its face, or as applied, today or in the past, N.Y. Real Prop. Tax Law § 1136[2](d) violates the Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution.

**COUNT VI**

**(AGAINST LOCAL GOVERNMENT DEFENDANTS AND DEFENDANT CLASS)**

**UNJUST ENRICHMENT**

127.　Plaintiffs reallege all previous paragraphs as if fully set forth herein.

128.　Local Government Defendants and Defendant Class have been enriched at Plaintiffs' and Plaintiff Class's expense.

129.　It is against equity and good conscience to permit Local Government Defendants and Defendant Class to retain the surplus proceeds.

130.　Though Local Government Defendants and Defendant Class have not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from Local Government Defendants and Defendant Class to Plaintiffs and Plaintiff Class.

131.    Local Government Defendants and Defendant Class have received money or value to which they are not entitled.

132.    Local Government Defendants and Defendant Class were enriched when they collected the surplus proceeds.

133.    Local Government Defendants and Defendant Class are not entitled to the surplus proceeds because Plaintiffs and Plaintiff Class are "entitled to the surplus in excess of the debt owed" to Local Government Defendants and Defendant Class.  *Tyler*, 598 U.S. at 642.

134.    Plaintiffs and Plaintiff Class, by losing property to the Local Government Defendants and Defendant Class to fulfill a tax debt of a lesser value, have made a greater contribution to Local Government Defendants and Defendant Class than they owed. *Cf. id*. It is therefore against equity and good conscience to permit Local Government Defendants and Defendant Class to retain the surplus proceeds.

135.    For the foregoing reasons, Plaintiffs and Plaintiff Class are owed restitution in the amount of the surplus proceeds collected by the Local Government Defendants and Defendant Class.

## COUNT VII

## (AGAINST LOCAL GOVERNMENT DEFENDANTS AND DEFENDANT CLASS)

## MONEY HAD AND RECEIVED

136.    Plaintiffs reallege all previous paragraphs as if fully set forth herein.

137.    Local Government Defendants and Defendant Class received money belonging to Plaintiffs and Plaintiff Class.

138.    Local Government Defendants and Defendant Class benefitted from receipt of the money.

139.    Under principles of equity and good conscience, Local Government Defendants and Defendant Class should not be permitted to keep the money.

140.    Local Government Defendants and Defendant Class received money belonging to Plaintiffs and Plaintiff Class when it collected the surplus proceeds because Plaintiffs and Plaintiff Class are "entitled to the surplus in excess of the debt owed" to Local Government Defendants and Defendant Class. *Tyler*, 598 U.S. at 642.

141.    Plaintiffs and Plaintiff Class, by losing property to the Local Government Defendants and Defendant Class to fulfill a tax debt of a lesser value, have made a greater contribution to Local Government Defendants and Defendant Class than they owed. *Cf. id*. It is therefore against equity and good conscience to permit Local Government Defendants and Defendant Class to retain the surplus proceeds.

142.    For the foregoing reasons, Plaintiffs and Plaintiff Class are owed restitution in the amount of the surplus proceeds collected by the Local Government Defendants and Defendant Class.

## COUNT VIII

## (AGAINST LOCAL GOVERNMENT DEFENDANTS AND DEFENDANT CLASS)

## EQUITABLE ACCOUNTING

143.    Plaintiffs reallege all previous paragraphs as if fully set forth herein.

144.    "An equitable accounting involves a remedy designed to require a person in possession of financial records to produce them, demonstrate how money was expended[,] and return pilfered funds in his or her possession." *Metro. Bank & Trust Co. v. Lopez*, 137 N.Y.S.3d 319, 322, 189 A.D.3d 443, 446 (2020) (quotation omitted).

26

145.    Local Government Defendants and Defendant Class as public bodies had a special, fiduciary, or legal relationship to Plaintiffs and Plaintiff Class as taxpayers, citizens, residents, voters, owners of private property within Local Government Defendants' jurisdiction, and members of the body politic.  That relationship gave rise to an obligation for Local Government Defendants and Defendant Class to husband Plaintiffs' and Plaintiff Class's property and the proceeds of the sale of that property, and a legal obligation to account to Plaintiffs and Plaintiff Class for the fate of Plaintiffs' and Plaintiff Class's property and the proceeds of sale, for the payment of taxes and associated charges from those proceeds and the amount of any surplus proceeds or value.

146.    Through the power of the state and its political subdivisions, Plaintiffs' and Plaintiff Class's money or property was entrusted to Local Government Defendants and Defendant Class, voluntarily or involuntarily, imposing the burden of accounting.

147.    There is no adequate remedy at law.

148.    There is no justification to impose a demand requirement in the circumstances of this action.  In any event, any such demand or refusal requirement is moot or would be futile insofar as Local Government Defendants and Defendant Class have already failed or refused to turn over the surplus proceeds, or spent them, or included them in their budgets as revenue, or stood on their purported taxation authority prior to the Supreme Court's decision in *Tyler,* and even after that decision have failed to reimburse Plaintiffs their surplus proceeds or value. Moreover, this action constitutes and should be deemed to constitute a satisfactory demand in itself, *nunc pro tunc*, to any date by which such demand may be required.

149.    When foreclosing on the property, Local Government Defendants and Defendant Class had a burden of accounting to demonstrate compliance with Article 11 or other state or local law, procedure or practice.

150.    Sometimes New York counties act as tax collectors for towns within the counties and allocate tax foreclosure sale proceeds between and among various local tax authorities. Because Local Government Defendants and Defendant Class, not Plaintiffs or Plaintiff Class, are in possession of the relevant financial records, Plaintiffs and Plaintiff Class cannot ascertain what portion of the outstanding taxes and associated charges that led to foreclosure of the Plaintiffs' and Plaintiff Class's Properties was due to the tax collecting entity of Local Government Defendants and members of Defendant Class and what portion was due to other local government tax authorities.

151.    Similarly, because Local Government Defendants and Defendant Class, not Plaintiffs or Plaintiff Class, are in possession of the relevant financial records, and because N.Y. Real Prop. Tax Law § 1136[2][d] and other state or local laws, procedures and practices purport to allow Local Government Defendants and Defendant Class to choose how to distribute collected surplus proceeds, Plaintiffs and Plaintiff Class cannot ascertain how the surplus proceeds were distributed.

152.    Therefore, absent an accounting, a remedy at law would be insufficient to ensure that Plaintiffs and Plaintiff Class are returned the correct amount of proceeds from the correct entities.

153.    For the foregoing reasons, Local Government Defendants and Defendant Class must produce financial records related to the collection and spending of surplus proceeds or value

in order to ascertain what entities owe what portion of the surplus proceeds to the Plaintiffs and Plaintiff Class.

## COUNT IX

## (AGAINST LOCAL GOVERNMENT DEFENDANTS AND DEFENDANT CLASS)

## INVERSE CONDEMNATION

154.    Plaintiffs reallege all previous paragraphs as if fully set forth herein.

155.    Local Government Defendants and members of Defendant Class:

    a.    Possess the power of eminent domain;

    b.    Intruded onto the private property of Plaintiffs and Plaintiff Class;

    c.    Intruded in a manner so serious as to amount to a compensable taking under the New York Constitution and U.S. Constitution; and

    d.    Have not exercised eminent domain power or compensated Plaintiffs or members of Plaintiff Class.

156.    Plaintiffs and Plaintiff Class have suffered damages in an amount to be proven at trial, which damages include the surplus proceeds or value.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand that:

    a)    The Court determine this action may be maintained as a plaintiff class action pursuant to Federal Rule of Civil Procedure Rule 23(a), 23(b)(1)(A),(B), 23(b)(2), and 23(b)(3) with Plaintiffs being designated as class representatives, and appointing Plaintiffs' counsel as counsel to Plaintiff Class;

b)   The Court determine this action may be maintained as a defendant class action pursuant to Federal Rule of Civil Procedure Rule 23(a), 23(b)(1)(A),(B), 23(b)(2), and 23(b)(3) with Local Government Defendants being designated as class representatives, and appointing Local Government Defendants' counsel as counsel to Defendant Class;

c)   The Court issue a declaratory judgment declaring and adjudging that N.Y. Real Prop. Tax Law § 1136[2](d) violates the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution;

d)   The Court issue a declaratory judgment declaring and adjudging that Local Government Defendants' and Defendant Class's use and taking of the surplus proceeds constitute a taking of private property for public use without just compensation in violation of the Fifth Amendment to the United States and New York Constitutions;

e)   The Court find and declare that Local Government Defendants' and Defendant Class members' taking of Plaintiffs' and Plaintiff Class Members' property was for no valid public use and violates the United States and New York Constitutions;

f)   The Court award Plaintiffs and Plaintiff Class compensatory damages in an amount to be determined at trial;

g)   The Court award equitable restitution to Plaintiffs and Plaintiff Class on account of the unjust enrichment of Local Government Defendants and Defendant Class;

30

h)      The Court order Local Government Defendants and Defendant Class to provide an equitable accounting of their takings of the surplus proceeds of the sale of properties formerly owned by Plaintiffs and Plaintiff Class, including, without limitation, cash proceeds and the value of property taken and retained by Local Government Defendants and Defendant Class;

i)      The Court order Local Government Defendants and Defendant Class to provide just compensation for inverse condemnation of the private property of Plaintiffs and Plaintiff Class;

j)      The Court award Plaintiffs and Plaintiff Class prejudgment and post-judgment interest, as permitted by law;

k)      The Court award Plaintiffs and Plaintiff Class their costs, reasonable litigation expenses, and reasonable attorneys' fees, as permitted by law and pursuant to 42 U.S.C. § 1988 and N.Y. C.P.L.R. 909 (McKinney 2011); and

l)      The Court grant such other and further legal, declaratory, and equitable, relief as the Court may deem just and proper.

**Demand for Jury Trial**

Plaintiffs and the proposed Plaintiff Class demand trial by jury of all issues so triable.


Dated: October 30, 2023

|  |  |
|---|---|
| | /s/ George F. Carpinello |
| Gregory P. Hansel | George F. Carpinello |
| Shana M. Solomon | Jenna Smith |
| Elizabeth F. Quinby | BOIES SCHILLER FLEXNER LLP |
| Michael D. Hanify | 30 South Pearl Street, 11th Floor |
| Kat Mail | Albany, NY 12207 |
| PRETI FLAHERTY BELIVEAU & | Tel:  (518) 434-0600 |
| PACHIOS, CHARTERED, LLP | Fax: (518) 434-0665 |
| One City Center | gcarpinello@bsfllp.com |
| P.O. Box 9546 | jsmith@bsfllp.com |
| Portland, ME 04112 | |
| (207)791-3000 | |
| ghansel@preti.com | |
| ssolomon@preti.com | |
| equinby@preti.com | |
| mhanify@preti.com | |
| kmail@preti.com | |

|  |  |
|---|---|
| David H. Fink | Joseph C. Kohn |
| Nathan J. Fink | Zahra R. Dean |
| FINK BRESSACK | Elias A. Kohn |
| 38500 Woodward Avenue Suite 350 | KOHN SWIFT & GRAF, P.C. |
| Bloomfield Hills, MI 48304 | 1600 Market Street, Suite 2500 |
| (248) 971-2500 | Philadelphia, PA 19103 |
| dfink@finkbressack.com | (215) 238-1700 |
| nfink@finkbressack.com | jkohn@kohnswift.com |
| | zdean@kohnswift.com |
| | ekohn@kohnswift.com |

Counsel for Plaintiffs and the Proposed Plaintiff Class