UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DANIEL J. MERCKX et. al.,

                                    Plaintiffs,

        v.                                                          1:23-CV-1354
                                                                    (FJS/MJK)

RENSSELAER COUNTY, *et. al.*,

                                    Defendants.

_____

SCULLIN, Senior Judge

## MEMORANDUM DECISION AND ORDER

Pending before the Court are Rensselaer County's, Cattaraugus County's, the City of Port

Jervis', and the City of Buffalo's motions to dismiss Plaintiffs Daniel J. Merckx's, Timothy S.

Laraway Jr.'s, Barbara Snashell's, Chignard and Martine Noelizaire's, Thomas Sweeny's, Dotty

Carr's, and Arthur McDowell's ("Plaintiffs") Amended Complaint.  *See* Dkt. Nos. 121, 93, 95, 94.

For the reasons below, the Court grants these motions in part and denies these motions in part.

## I. BACKGROUND

A.      Facts

        *1. Rensselaer County*

Ronald P. Merckx owned property located at 3 Pinewood Avenue ("Merckx Property") in

Rensselaer County.  (Amended Complaint, Dkt. 75, pg. 5, at ¶¶13,14).  At some point,

Rensselaer County foreclosed on the Merckx Property due to $37,707 in unpaid taxes, fees,

and/or penalties owed. (*Id.* at ¶15).[1] On July 25, 2018, Ronald P. Merckx died. (*Id.* at ¶16). Nearly a month later, on August 31, 2018, Rensselaer County sold the Merckx Property for $80,000, which netted the County $42,293 of surplus monies. (*Id.* at ¶¶16, 17). Rensselaer County never returned the surplus money to the Merckx Estate, which Plaintiff Daniel J. Merckx administrates and to which he is the only heir. (*Id.* at ¶¶13, 17). Rensselaer County does not have a process to return the surplus value. (*Id.*, pg. 6, at ¶19).

Timothy S. Laraway Jr. owned property located at 3135 U.S. Highway ("Laraway Property") in Rensselaer County. (*Id.* at ¶22). At some point, Rensselaer County foreclosed on the Laraway Property because of $8,810 of unpaid fees. (*Id.* at 23). On October 30, 2017, Rensselaer County sold the Laraway Property for $29,000, netting $20,190 in surplus proceeds. (*Id.* at ¶¶24, 25). Rensselaer County never returned the surplus proceeds to Plaintiff Laraway Jr. (*Id.*, pgs. 6-7, at ¶¶25-28).

### 2. Cattaraugus County

Barbara Snashell owned property located at 9152 Route 219 ("Snashell Property") in Cattaraugus County. (*Id.*, pg. 7, at ¶30). At some point, Cattaraugus County foreclosed on the Snashell Property because of $11,846 in unpaid fees. (*Id.* at ¶31). In 2021, Cattaraugus County sold the Snashell Property for $60,400, netted $48,554 in surplus proceeds, and retained the surplus proceeds. (*Id.* at ¶¶32-34). Cattaraugus County neither returned the surplus proceeds to Plaintiff Snashell nor had a process to return the surplus proceeds. (*Id.* at ¶¶35-36).

---

[1] For brevity, this MDO will use "fees" as a shorthand for "taxes, fees, and/or penalties owed."

### 3. The City of Port Jervis

Chignard and Martine Noelizaire owned property located at 185 Ball Street ("Noelizaire Property") in the City of Port Jervis. (*Id.*, pg. 8, at ¶38). In December 2017, Port Jervis foreclosed on the Noelizaire Property because of $2,562.29 in unpaid fees. (*Id.* at ¶¶39-40). In December 2019, Port Jervis sold the Noelizaire Property for $26,500. (*Id.* at ¶41). Port Jervis netted and retained $23,937 of surplus proceeds. (*Id.* at ¶42, 45). The Noelizaire Plaintiffs allege that Port Jervis does not have process to return surplus value. *See* (*Id.*, pg. 24, at ¶128). The Port Jervis Charter reads in relevant part:

> The City Clerk-Treasurer, after the period of redemption shall have expired, shall pay any surplus which may be paid to him in a case where the bid exceeds the tax, assessment, penalty or interest, and costs and expenses of sale as hereinbefore provided, to the person or persons entitled thereto, and such person or persons shall be ascertained in the same manner and by the same proceedings as in the case of a surplus arising from the foreclosure of a mortgage on real estate.

(Port Jervis MTD, Dkt. 95-13, at pg. 4).

### 4. The City of Buffalo

Mary Pedano owned property located at 2445 Bailey Avenue ("Pedano Property") in the City of Buffalo. (Amended Complaint, Dkt. 75, pg. 9, at ¶47). At some point, the City of Buffalo foreclosed on the Pedano Property because of $4,668.26 of unpaid fees. (*Id.* at ¶48). On April 22, 2013, Mary Pedano died, and her son, Plaintiff Thomas Sweeny, became Executor of her Estate. (*Id.* at ¶49). In October 2019, the City of Buffalo sold the Pedano Property for $48,000. (*Id*. at ¶50). The City netted and retained $43,331.74 of surplus proceeds. (*Id.* at ¶¶51-

52).  Plaintiff alleges that the City of Buffalo does not have a process to return surplus money. *See* (*Id.*, pg. 24, at ¶128).

Carolyn Dell Carr owned property located at 27 Sweet Avenue ("Carr Property") in the City of Buffalo.  (*Id.*, pg. 9, at ¶54).  At some point, the City foreclosed the Carr Property because of $4,537.15 of unpaid fees. (*Id.*, pg. 10, at ¶55).  On May 1, 2020, Carolyn Carr died, and on August 31, 2022, Carolyn's sister, Plaintiff Dotty Carr, became the Voluntary Administrator of her estate.  (*Id.* at ¶56).  In October 2019, the City of Buffalo sold the Carr property for $35,000.  (*Id.* at ¶57).  The City obtained $30,462.85 of surplus value proceeds and never returned the surplus to Carolyn or her estate.  (*Id.* at ¶¶58-59).

Plaintiff Arthur McDowell and his mother, Lola McDowell, owned property located at 69 Wade Avenue ("McDowell Property").  (*Id.* at ¶¶61-62).[2]  At some point, the City of Buffalo foreclosed on the McDowell Property because of $2,592.14 of unpaid fees. (*Id.* at ¶63).  In October 2019, the City of Buffalo sold the McDowell Property for $43,000.  (*Id.* at ¶64).  The City netted $40,407.86 of surplus money, retained the surplus money, and never returned it to Plaintiff McDowell.  (*Id.*, pg. 10, at ¶¶ 65-67).

**B.     Procedural History**

Plaintiffs now sue the following:

1.  Rensselaer County;
2.  Mark Wojcik in his official capacity as Chief Fiscal Officer of Rensselaer County;
3.  Cattaraugus County;
4.  Matthew J. Keller, in his official capacity as Treasurer of Cattaraugus County;
5.  The City of Port Jervis;
6.  Laura Quick, in her official capacity as City-Clerk Treasurer of Port Jervis,
7.  The City of Buffalo;

---

[2] Lola McDowell died in January 2023.  (Amended Complaint, Dkt. 75, pg. 9, at ¶62).

8. Michael Seaman, in his official capacity of Director of Treasury and Collections of Buffalo;

9. New York State Attorney General Letita James; and

10. Amanda Hiller, the Acting Tax Commissioner for the New York State Department of Taxation and Finance

("Defendants").  (Amended Complaint, Dkt. 75, pgs. 11-12, at ¶¶ 68-81).[3]

Relevantly, Plaintiffs plead 10 claims in their lawsuit:

1. Violation of the U.S. Constitution's Fifth Amendment's Takings Clause
2. Violation of Article I § 7 of New York State's Constitution (The New York State Constitution's Takings Clause)
3. Violation of the U.S. Constitution's Eighth Amendment's Excessive Fines Clause
4. Violation of Article I § 5 of New York State's Constitution (The New York State Constitution's Excessive Fines Clause)
5. Declaratory Judgment that N.Y. Real Property Tax Law §§ 1136(2)(D), 1136(3) violate the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution
6. Unjust enrichment
7. Money Had and Received
8. Equitable Accounting
9. Inverse Condemnation
10. Injunctive Relief

(*Id.* at pgs. 23-35).

Under Fed. R. Civ. P. 42(a), Magistrate Judge Mitchell J. Katz consolidated several cases

due to the common issues of law and fact.  (Consolidation Order, Dkt. 126).[4]  Now, Defendants

---

[3] Defendants Keller, Wojcik, Quick, Seaman, James, and Hiller have been terminated based on stipulations of dismissal.  (Dkt. 140).

[4] Magistrate Judge Katz "determined that there are common questions of law that affect all of the cases and have been raised in the motions to dismiss that have been filed in *Merckx, et. al. v. Rensselaer County*, et. al., 1:23-CV-1354, *Rich v. Warren Cty*., 1:24-CV-314[,] and *Wolszyn v. Tioga County*, 3:23-CV-1585."  "Pursuant to Fed. R. Civ. P. 42," Magistrate Judge Katz, on his own, "consolidate[ed] the cases with the following case numbers: 1:23-CV-1311, 1:23-CV-1539, 1:23-CV-1574, 1:23-CV-1615, 1:23-CV-1649, 1:24-CV-259, 1:24-CV-280, 1:24-CV-281, 1:24-CV-314, 1:24-CV-327, 1:24-CV-328, 3:23-CV-1585, 3:24-CV-9, 3:24-CV-258, 5:23-CV-1603, 5:24-CV-15, 5:24-CV-289, 5:24-CV-594, 5:24-CV-742, 6:23-CV-1587, 6:24-CV-287, 6:24-CV-868, 6:24-CV-902, 8:23-CV-1524, 8:23-CV-1606, 8:24-[CV-] 250, and 8:24-CV-257 with *Merckx, et al v. Rensselaer County*, et. al., 1:23-CV-1354, for the singular purpose of addressing

move to dismiss Plaintiffs' Amended Complaint.[5]  Plaintiffs responded.  (Pl. Response, Dkt. 102).  And Defendants replied.  (City of Buffalo Reply Br., Dkt. 118); (Def. Consolidated Reply Br., Dkt. 119).  The Court now addresses these motions.[6]

## II. STANDARD OF REVIEW

Although complaints do "not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal quotation omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted).  A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement' will not suffice."  *Id.* (quotation omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (citations omitted).

When ruling on a defendant's motion to dismiss, all factual allegations contained in the complaint must be accepted as true and all reasonable inferences must be drawn in favor of the

---

the common questions of law in the context of the pending motions to dismiss (Dkt. Nos. 93, 94, 95, 121)." (Dkt. 126) (cleaned up).

[5] (Rensselaer County MTD, Dkt. 121); (Cattaraugus County MTD, Dkt. 93); (City of Buffalo MTD, Dkt. 94); (Port Jervis MTD, Dkt. 95).

[6] Consistent with the consolidation order, the Court considers the additional arguments briefed by the non-moving Defendants as additional support for dismissal, and the additional arguments briefed by other Plaintiffs as additional arguments in opposition to dismissal.  Any claims or defenses not addressed in this decision may be advanced by the parties in a properly filed motion for summary judgment in their individual cases.

plaintiff.  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012) (citation omitted).  But "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 663 (citation omitted).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'"  *Leonard F. v. Isr. Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation omitted).

### III. DISCUSSION

In this section, the Court provides a blueprint on how to read the decision.  First, the Court addresses whether Plaintiffs have failed to state a claim.  In Section III.A., the Court holds that Plaintiffs have stated a claim.  Second, the Court addresses the defenses that Defendants have raised to determine whether they are applicable.  In Section III.B., the Court holds that the statutes of limitations have been equitably tolled.  In Section III.C., the Court holds that Plaintiffs do not have standing to seek declaratory and injunctive relief.  In Section III.D., the Court holds that Plaintiffs Merckx and Sweeney do not have capacity to sue, but Plaintiff Carr does.  In Section III.E., the Court holds that Defendants' notice-of-claim defense is inapplicable to Plaintiffs' federal law claims, but Plaintiffs' state constitutional claims must be dismissed.  In Section III.F., the Court holds that venue is proper in the Northern District of New York.  In Section III.G, the Court holds that the case does not need to be dismissed, under Fed. R. Civ. P. 12(b)(7), for failure to join necessary parties under Rule 19.  In Section III.H., the Court holds that this case does not present a political question.  In Section III.I., the Court holds neither claim

preclusion nor issue preclusion bars Plaintiffs' Takings Clause claim.  And finally, in Section III.J., the Court holds that *Rooker-Feldman* does not strip this Court of jurisdiction.

**A.      Plaintiffs have plausibly alleged a Takings Clause violation.**

Plaintiffs have plausibly alleged a Takings Clause claim.  To plausibly allege a Takings Clause violation, Plaintiffs must plead that (1) the defendants have sold the plaintiffs' property for surplus value; (2) the defendants have retained the surplus value; and (3) the defendants do not have a process to return the surplus value.  Here, Plaintiffs have plausibly alleged that Rensselaer County, Cattaraugus County, Port Jervis, and the City of Buffalo sold Plaintiffs' property for surplus value, retained the surplus, and failed to maintain a process to return that surplus value.  In consequence, the Court finds that Plaintiffs have plausibly alleged a Takings Clause violation.

Examining the Supreme Court's and Second Circuit's Takings Clause jurisprudence, the Court fashions a three-part test to determine if a plaintiff has plausibly alleged a Takings Clause violation.  At step one, the Court asks whether the municipality has sold the plaintiff's property for surplus value.  *See Tyler v. Hennepin County, Minnesota,* 598 U.S. 631, 647 (2023).  If yes, the Court moves on to step two.  At step two, the Court asks whether the municipality has kept that surplus.  *See id.*  If yes, the Court then moves to step three.  At step three, the Court asks whether the municipality has a process to return the surplus value.  *See id.*; *Nelson v. City of New York*, 352 U.S. 103, 109-10 (1956).  If the municipality maintains an independent process for returning the surplus value, the plaintiff has not plausibly alleged a Takings Clause violation.  *See Nelson,* 352 U.S. at 110 (finding no Takings Clause violation because New York City had a process for returning surplus value after it sold foreclosed property).  But if the municipality does

not maintain an independent process for returning a plaintiff's surplus value after the sale of their foreclosed property, then a plaintiff can plausibly allege a Takings Clause claim. *See Sikorsky v. City of Newburgh, New York,* 136 F.4th 56, 60 (2d Cir. 2025) ("If New York [S]tate or the City of Newburgh provide Sikorsky with no procedure to get that money back, the Constitution supplies a remedy").

Plaintiffs have plausibly alleged the first two elements. Starting with Plaintiff Merckx, the Amended Complaint alleges that Rensselaer County foreclosed on the Merckx property because of $37,707 in unpaid fees. (Amended Complaint, Dkt. 75, pg. 4, at ¶13). On August 31, 2018, the County sold the Merckx property for $80,000. (*Id.* at ¶14). Rensselaer County netted $42,293 of surplus value and retained that surplus money instead of returning it to the Merckx estate. (*Id.* at ¶15). Similarly pleaded, Rensselaer County foreclosed on the Laraway property because of $8,810 in unpaid fees. (*Id.*, pg. 5, at ¶21). On October 30, 2017, the County sold the Laraway property to a third party for $29,000. (*Id.* at ¶22). Rensselaer County has retained the $20,190 of surplus value. (*Id.* at ¶24). The County has not returned the surplus value to Plaintiff Laraway. (*Id.* at ¶23). The Amended Complaint also alleges that Cattaraugus County foreclosed on the Snashell property because of $11,846 of unpaid fees. (*Id.*, pg. 7, at ¶31). In 2021, Cattaraugus County sold the Snashell property to a third party for $60,400, netted $48,554 of surplus value, and retained the surplus money. (*Id.* at ¶32-33). Like the counties, Port Jervis foreclosed on the Noelizaire property because of $2,563 in unpaid fees. (*Id.*, pg. 7, at ¶40). At some point, Port Jervis foreclosed on the Noelizaire property, sold the property to a third party for $26,500, and netted $23,937 of surplus value. (*Id.* at ¶¶41-42). Port Jervis retained the surplus money. (*Id.* at ¶43). Finally, the Amended Complaint alleges that the City of Buffalo foreclosed on the Pedano Property because of $4,668.26 in unpaid fees, sold the property for

$48,000.00, netted $43,331.74 in surplus value, and retained that surplus. (*Id.* at ¶48-52). The City of Buffalo also foreclosed on the Carr property because of $4,537.15 of unpaid fees, sold the Carr property for $35,000, netted $30,462.85 in surplus value, and retained that surplus. (*Id.*, pg. 10, at ¶¶55-58). Lastly, the City of Buffalo foreclosed on the McDowell property because of $2,592 of unpaid fees, sold the McDowell property for $43,000, netted $40,407.86 in surplus value, and retained that surplus. (*Id.*, pgs. 10-11, at ¶62-67). Assuming these allegations are true -- as the Court is required to do at this stage of the litigation -- the Court finds that Plaintiffs have plausibly alleged that Defendants have sold Plaintiffs' properties for surplus value, and Defendants have retained the surplus value instead of returning it to Plaintiffs. *See Iqbal*, 556 U.S. at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

Next -- and most critically -- the issue is whether the city and county Defendants maintained a process to return surplus value to Plaintiffs. Plaintiffs allege that neither Rensselaer County, Cattaraugus County, Port Jervis, nor the City of Buffalo maintained a process to return surplus value. (Amended Complaint, Dkt. 75, pgs. 6-8, 24 at ¶¶ 17, 25, 33, 41, 128).

Rensselaer County, Cattaraugus County, and the City of Buffalo dispute this allegation, but their arguments are unpersuasive. Rensselaer County implies that New York's C.P.L.R. 7803(1) ("Article 78") was the County's process to return the surplus value to Plaintiffs Merckx and Laraway, and those Plaintiffs failed to engage that process. *See* (Rensselaer MTD, Dkt. 121-1, at pg. 8) ("In this matter, none of the Rensselaer County Plaintiffs filed Article 78 special proceedings in state court within 4 months of the *in rem* judgments . . . The Plaintiffs' claims must therefore fail."). Likewise, Cattaraugus County and the City of Buffalo argue that Plaintiffs needed to file an Article 78. But this argument fails. *See* (Cattaraugus County MTD, Dkt. 93-3,

at pgs. 1-3); (Buffalo MTD, Dkt. 94-2, at pgs. 2-3).  At the time Plaintiffs' properties were sold, New York "lacked a mechanism" for plaintiffs "to recover surplus above the tax debt."  *Cavaluzzi v. Cnty. of Sullivan*, No. 23 Civ. 11067, 2024 WL 5238644, at \*5 (S.D.N.Y. Dec. 27, 2024).  So Plaintiffs did not have a remedy.

New York's post-*Tyler* process to obtain surplus value does not change the analysis.  New York's post-*Tyler* statute only provides redress to a plaintiff whose property was foreclosed before May 25, 2023,  "*if and only if*" the plaintiff timely initiated an Article 78, and that proceeding was still pending at the time the post-*Tyler* scheme was enacted.  2024 N.Y. Sess. Laws ch. 55, pt. BB. (emphasis added).  Because Plaintiffs' properties were "sold prior to May 25, 2023, and" they "never brought an Article 78, in state court, the New York law afford[ed]" them "no remedy"; and, because Plaintiffs did not have "a local remedy, the Constitution fills the gap."  *Sikorsky*, 136 F.4th at 61 (holding that the plaintiff plausibly alleged a Takings Clause claim).  In sum, the Court rejects Defendants' arguments that they maintained a process to return surplus value.  Putting this into Rule 12(b)(6)'s legal framework, Plaintiffs Merckx, Laraway, and Snashell have plausibly alleged that Rensselaer County, Cattaraugus County, and the City of Buffalo have violated the Takings Clause.

To the extent Rensselaer County, Cattaraugus County, and the City of Buffalo argue that their notice procedures were sufficient process, that is wrong.  Redemption rights and a process to obtain surplus value are distinct.  If they were the same, *Tyler* would make no sense.  The *Tyler* Court analyzed a Minnesota scheme that allowed "the delinquent taxpayer . . . three years to redeem the property" yet it determined that the plaintiff had "no opportunity to recover [their] surplus."  *Tyler*, 598 U.S. at 635.  If a redemption right and a jurisdiction's process to return surplus value were the same, the *Tyler* Court would have determined that the plaintiff in that case

had the opportunity to obtain surplus value because they had an opportunity to redeem.  The

*Tyler* Court did not say that, and this Court refuses the invitation to misread that case.

Defendants' counter argument -- that *Tyler* does not apply retroactively -- is also

incorrect.  When the Supreme Court "applies a rule of federal law to the parties before it, that

rule is the controlling interpretation of federal law and must be given full retroactive effect in all

cases still open on direct review and as to all events, *regardless of whether such events predate* or

postdate [the Supreme Court's] announcement of the rule."  *Harper v. Virginia Dep'. of Tax'n.*,

509 U.S. 86, 97 (1993) (emphasis added).  "Consistent with this principle, the Supreme Court

has remanded cases to lower courts to apply *Tyler* to cases involving pre-*Tyler* property tax

sales."  *Cavaluzzi*, 2024 WL 5238644, at \*6 (collecting cases).  Put differently, "*Tyler* has 'full

retroactive effect . . . as to all events,' even if those events, -- such as the tax sales – 'predated' the

announcement of the rule."  *Polizzi v. Cnty. of Schoharie*, 720 F. Supp. 3d 141, 149 (N.D.N.Y.

2024).

Differing from the other Defendants, Port Jervis argues that it maintained an independent

process to return surplus value, so the Noelizaire Plaintiffs cannot state a claim against the city.

*See* (Port Jervis MTD, Dkt. 95-13, at pg. 14).  The Court rejects that argument because Port

Jervis' reliance on extrinsic material is improper at this stage. *See Goel v. Bunge, Ltd.,* 820 F.3d

554, 559 (2d Cir. 2016).  "Rule 12(b)(6) motion[s] challenge[] the complaint as presented by the

plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may

review only a narrow universe of materials."  *Id.*  Courts may only consider extrinsic documents

if they are "expressly incorporated by reference" or the document is "integral to the complaint."

*Id.*  A document is integral "where the complaint 'relies heavily upon its terms and effect[.]'"

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  Generally, an integral

document "'is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason -- usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim -- was not attached to the complaint.'" *Goel v. Bunge, Ltd.,* 820 F.3d at 559. (quotation omitted).

Plaintiffs did not incorporate Port Jervis' charter by reference.  "The line between incorporating by reference and not doing so is fine, and, when the document is merely referenced or quoted, the determination 'depends on the extent to which it is relied upon and made use of in the Complaint.'" *Wang v. Bethlehem Cent. Sch. Dist.*, No. 1:21-CV-1023 (LEK/DJS), 2022 WL 3154142, at *15 (N.D.N.Y. Aug. 8, 2022) (quotation omitted).  But "merely referencing a document; even quoting from a document" does not incorporate it.  *Id.*  Here, Plaintiffs only referenced Port Jervis' Charter once, and that is not enough to find that Plaintiffs incorporated the Charter by reference.  *See Goel*, 820 F.3d at 559.

Port Jervis' Charter is not integral to Plaintiffs' Complaint.  True, Port Jervis' surplus-proceeds process is noted in Port Jervis' Charter.  *See* (Port Jervis MTD, Dkt. 95-13, at pg. 14). But Plaintiffs' argument seems to be that there is no surplus-proceeds process because Port Jervis does not comply with its Charter.  Specifically, Plaintiffs argue that "Port Jervis'[] own assertions plausibly allege that Port Jervis nevertheless employs a policy, custom, or practice of depleting surplus . . . after Port Jervis becomes the record owner of the properties."  (Pl. Response, Dkt. 102, at pg. 12).  There is a kernel of truth to this argument.  Although Port Jervis' Charter  notes that "[t]he City Clerk-Treasurer . . . shall pay any surplus which may be paid to him in a case where the bid exceeds the" fees "to the person or persons entitled thereto, and such person or persons shall be ascertained in the same manner and by the same proceedings as in the case of a surplus arising from the foreclosure of a mortgage on real estate," Port Jervis argues that its

- 13 -

process was "accessible to Plaintiffs before the entire years' long process[.]" *Compare* (Port Jervis MTD, Dkt. 95-13, at pg. 14) *with* (Port Jervis MTD, Dkt. 95-13, at pg. 15). But under the Charter's own words -- the Noelizaire Plaintiffs did not need to avail themselves of the process. (*Id.* at pg. 14). At this stage of the litigation (with Plaintiffs litigating a novel claim), the Court cannot say that Port Jervis' Charter is integral to Plaintiffs' Complaint. *See Sikorsky*, 136 F. 4th at 59 ("[W]here local law 'provides no opportunity for the taxpayer to recover' sale proceeds in excess of the tax debt owed, a plaintiff may bring a claim for a constitutional taking against the municipality."). Therefore, the Court does not consider the documents Port Jervis attached; and, because it does not, the Court finds that the Noelizaire Plaintiffs have plausibly alleged a Takings Clause claim.

To end, the Court finds that Plaintiffs have plausibly alleged that Rensselaer County, Cattaraugus County, Port Jervis, and the City of Buffalo have violated the Takings Clause.

**B.      Plaintiffs' claims are not time-barred because they exercised diligence after exceptional circumstances prevented them from obtaining the surplus value to which they may have been entitled.**

The Court equitably tolls Plaintiffs' claims until the date the Supreme Court decided *Tyler*. If a litigant can show that they have been pursuing their rights diligently and some extraordinary circumstance stood in their way, a court can equitably toll the statute of limitations. Here, Plaintiffs argue that the statute of limitations should be tolled because New York's Real Property Tax Law did not allow Plaintiffs to obtain surplus value pre-*Tyler*; *Tyler* changed their ability to obtain surplus value; and Plaintiffs have immediately attempted to use the right they obtained from *Tyler*. The Court agrees. In consequence, the Court finds that Plaintiffs' claims are not time barred.

Section 1983 does not "contain[] a statute of limitations, and thus courts must borrow a state statute of limitations." *Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 107 (2d Cir. 2023). "Courts 'must apply the most appropriate or analogous statute of limitations,' so long as it is not inconsistent with federal law or policy." *Id.* (quotation and other citation omitted). "'[Section] 1983 claims are best characterized as personal injury actions[.]'" *Lounsbury v. Jeffries*, 25 F.3d 131, 133 (2d Cir. 1994) (quotation omitted). "Thus a state's personal-injury statute of limitations" applies "to all § 1983 claims." *Id.* In New York, the statute of limitations for such actions is three years. *Doe v. NYS Off. of Child. & Fam. Servs.*, No. 1:20-cv-01195 (BKS/CFH), 2021 WL 2826457, at *6 (N.D.N.Y. July 7, 2021) (citing N.Y. C.P.L.R. §214(5)). "Federal law determines when a section 1983 cause of action accrues" and "accrual occurs "'when the plaintiff knows or has reason to know of the injury which is the basis of [their] action.'"" *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (quotation and other citations omitted).[7]

"In 'rare and exceptional circumstances,' . . . the statute of limitations governing a § 1983 claim may be subject to equitable tolling, 'where necessary to prevent unfairness to a plaintiff who is not at fault for [their] lateness in filing.'" *Clark v. Hanley*, 89 F.4th 78, 92 (2d Cir. 2023) (quotation and footnote omitted). To plausibly allege equitable tolling, "'a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that [they] ha[ve] been pursuing [their] rights diligently, and (2) that some extraordinary circumstance stood in [their] way.'" *Id.* (quotation omitted). "The law prohibits a judge from exercising [their] discretion

---

[7] In their response, Plaintiffs do not argue that their claims fall within §1983's three-year time frame. Plaintiffs only argue that the statute of limitations was tolled under the doctrine of equitable tolling. (Pl. Response, Dkt. 102, at pgs. 21-22). Because that is what these Plaintiffs argued, they have effectively waived the argument that their claims were not time barred without applying equitable tolling. Since that argument is waived, the Court does not address it.

where these two elements are missing.  If they are found to be present, however, then a judge

brings discretionary considerations to bear in deciding whether to permit equitable tolling." *Doe*

*v. United States*, 76 F.4th 64, 71 (2d Cir. 2023)

New York law prevented Plaintiffs from obtaining the surplus money they now seek.

Pre-*Tyler*, Article 11 of New York's Real Property Tax Law "automatically allowed taxing

authorities to retain surplus value after tax lien foreclosure sales."  *Matter of Seelbach*, 85 Misc.

3d 497, 508 (N.Y. Sup. Ct. 2024) (citations omitted).  In *Tyler*, the Supreme Court struck down

Minnesota's foreclosure scheme, which, like New York, failed to provide individuals with an

opportunity to obtain surplus value.  *Tyler*, 598 U.S. at 645.  "*Tyler* cast doubt on laws

nationwide -- including New York's" Real Property Tax Law.  *Matter of Seelbach*, 85 Misc. 3d at

508.  "In response, [New York's] Legislature amended" Article 11 of the Real Property Tax Law

"to establish multiple methods to assert surplus rights under *Tyler* and the Takings Clause[.]"  *Id.*

(citation omitted).  With that backdrop, it seems unlikely that Plaintiffs would have obtained a

remedy in state court pre-*Tyler*.  And with that unlikely probability, it would be an extraordinary

request of Plaintiffs -- who lost their homes because they could not afford fees -- to find a lawyer

to fight what was likely a losing battle.  *See Miner v. Clinton Cnty., N.Y.*, 541 F.3d 464, 475 (2d

Cir. 2008) ("The District Courts in both cases properly dismissed plaintiffs' claims for a share of

any surplus.  The retention of any surplus from a tax auction is constitutional because there was

no violation of plaintiffs' right to due process related to the notices of foreclosure" (citation

omitted)); *Wasiluk v. City of Oneida*, *New York*, No. 5:19-cv-280, 2022 WL 3716279, at *13

(N.D.N.Y. Aug. 29, 2022) ("Here, because the applicable procedures do not afford a former

property owner an avenue to obtain surplus equity, because Plaintiff received adequate notice of

the forfeiture proceedings and an opportunity to redeem his property but failed to act, and

because Plaintiff did not have a recognized property interest in the surplus equity once the foreclosure proceeding was completed and the subject property conveyed to the City in *fee* [simple absolute], Plaintiff has no constitutional claim for the surplus equity in his former property" (citations omitted)); *Cf. Wharton v. Cnty. of Nassau,* No. 07-CV-2137 (RRM) (ETB), 2010 WL 3749077, at *4 (E.D.N.Y. Sept. 20, 2010) (applying equitable tolling to the plaintiffs' §1983 claim because they relied on the law as it was to their detriment and a strict application of the Supreme Court case that changed the law "would effectively deprive Plaintiffs of their cause of action.").

Plaintiffs have diligently pursued their rights since the Supreme Court decided *Tyler*. On May 25, 2023, the United States Supreme Court decided *Tyler* and held that a jurisdiction's failure to have any process to return surplus value violated the Taking Clause. *Tyler*, 598 U.S. at 645. Once the Supreme Court made this decision, Plaintiffs acted. *See* (Dkt. 1). This case is unlike *Fonvil v. Cnty. of Rockland*, No. 17 CV 2957 (VB), 2018 WL 357309 (S.D.N.Y. Jan. 9, 2018). There, the court held that the plaintiff was not entitled to equitable tolling because he waited 10 years after a change in the law to bring his §1983 claim. *Id.* at *4. Here -- *five* months after the Supreme Court decided *Tyler* -- Plaintiffs filed a Complaint. On this record -- at this stage of litigation -- the Court finds that such a quick reaction demonstrates diligence. *See, e.g., Stensrud v. Rochester Genesee Reg'l Transportation Auth.*, 507 F. Supp. 3d 444, 453 (W.D.N.Y. 2020) (applying equitable tolling where "Plaintiffs filed the instant lawsuit approximately three months after the Supreme Court's" decision changed the law).

Defendants' argument against equitable tolling -- that the right always existed -- is unpersuasive because *Tyler* created a new claim in *this* Circuit. To make sense of this statement, the Court must start with a history lesson.

- 17 -

The Supreme Court collapsed the Fifth Amendment Takings Clause and Due Process Clause analysis for surplus proceeds cases in *Nelson*. In 1956, the Supreme Court decided *Nelson*. *See* 352 U.S. at 103. In Nelson's reply, he argued that "the City's retention of property, in one instance, and proceeds of sale in the other, far exceeding in value the amounts due" deprived him "of property without due process of law or" he had "suffered a taking without justification." *Id.* at 109. The *Nelson* Court, rejecting this argument, focused its attention on *United States v. Lawton*, 110 U.S. 146 (1884). *Id.* In that case, the *Lawton* Court affirmed a judgment in favor of a foreclosed landowner and reasoned that, "[t]o withhold the surplus from the owner would be to violate the fifth amendment to the constitution, and deprive him of his property without due process of law or take his property for public use without just compensation." *Lawton*, 110 U.S. at 150. The *Nelson* Court, after quoting that language from *Lawton*, noted that New York City's law did not "absolutely preclude[] an owner from obtaining the surplus proceeds of a judicial sale." *Nelson*, 352 U.S. at 110. But importantly, the Court noted that *Lawton* appeared in a statutory context. *Id.* Finally, the *Nelson* Court "h[e]ld nothing in the Federal Constitution prevents" New York City from "retain[ing] the property or the entire proceeds of its sale" if "the record shows adequate steps were taken to notify the owners of the charges due and the foreclosure proceedings." *Id.* at 110. Reading *Nelson* in this context, a jurisdiction did not violate the Takings or Due Process clause if it maintained a process to obtain surplus value and gave persons adequate notice of the process. *See id.* In essence, a jurisdiction's compliance with *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983) -- which required foreclosure processes to comply with the Due Process Clause -- prevented courts from finding that a jurisdiction violated the Takings or Due Process Clauses when they retained surplus.

That understanding seemed to be the prevailing wisdom.  In 1969, a three-judge panel in the Northen District of Illinois dismissed a complaint for failing to state a claim, where the plaintiffs argued that the Illinois statute allowed purchasers to obtain surplus value, violating the Due Process Clause.  *See Balthazar v. Mari Ltd.*, 301 F. Supp. 103, 105-6 (N.D. Ill. 1969).  The Supreme Court summarily affirmed that decision.  *See Balthazar v. Mari Ltd.,* 396 U.S. 114 (1969).  Likewise, in 2007, this Court decided *Tupaz v. Clinton Cnty.*, 499 F. Supp. 2d 182 (2007).  There, the plaintiffs argued that the County violated their due process and equal protection rights "'by depriving them of the right to recoup any surplus obtained over the amount of delinquent taxes, interest, and penalties.'"  *Tupaz*, 499 F. Supp. 2d at 191-92.  The Court rejected this argument.  Specifically, the Court cited *Nelson* and reasoned that "[t]here is no legitimate reason not to apply *Nelson* . . . to the facts of this case."  *Id.* at 192.  Put differently, the same arguments Plaintiffs made here -- although citing a different constitutional provision -- this Court rejected nearly 20 years ago.

The Second Circuit affirmed *Tupaz*.  The *Tupaz* plaintiffs appealed the court's decision and the Second Circuit decided that appeal.  *See Miner*, 541 F.3d at 646.  The *Miner* court, while affirming *Tupaz,* quoted *Nelson*.  Specifically, the *Miner* court reasoned that "[N]othing in the Federal Constitution prevents [foreclosing on a property and retaining a surplus from a tax auction] where the record shows adequate steps were taken to notify owners of the charges due and the foreclosure proceedings."  *Miner*, 541 F.3d at 475 (brackets in original, parentheses removed).  Although the *Miner* court was discussing the Due Process Clause, nothing in that case's reasoning indicates that its reasoning did not extend to the Takings Clause.  In fact, this Court viewed *Miner*'s reasoning as applying to the Takings Clause.  *See Wasiluk*, 2022 WL 3716279, at * 13 (rejecting the plaintiffs' Takings Clause claim, finding that the plaintiffs had no

constitutional interest in surplus value and citing *Nelson* and *Miner* to support the proposition). Again, Courts treated the Due Process and Takings Clause claims as intermingled.

True, not all Courts intermingled the Due Process Clause and Takings Clause claims. *See Coleman through Bunn v. D.C.,* 70 F. Supp. 3d 58, 79-80 (D.D.C. 2014) (reasoning that "*Lawton* made clear that a Takings Clause violation will arise when a tax-sale statute grants a former owner an independent property interest in the surplus equity and the government fails to return that surplus."). But other Courts relied on *Nelson* to deny Takings Clause claims. *See id.* (collecting cases).

*Tyler* clarifies the confusion arising from *Nelson*. In *Tyler* the Court clarified that a jurisdiction's retention of surplus value, without any process to obtain the surplus, is unconstitutional because it violates the Takings Clause. *See Tyler*, 598 U.S. at 647. Put differently, the *Tyler* court removed the Due Process Clause from the analysis. *See id.* If the jurisdiction does not have a process to return surplus value, plaintiffs may plausibly allege that that the jurisdiction violated the Takings Clause. *See id.* If the jurisdiction has a process, then plaintiffs cannot plausibly allege a Takings Clause claim. *See id.* That clarification is important because courts in this circuit have previously rejected the argument that *Tyler* made. *See Wasiluk,* 2022 WL 3716279, at \*13; *see also Tupaz,* 499 F. Supp. 2d. at 192. Because there was such doctrinal confusion, the Court equitably tolls the Plaintiffs' Takings Clause claim to May 25, 2023 -- the date the Supreme Court decided *Tyler*.

\* \* \*

To end, the Court finds that Plaintiffs' claims are not time-barred because they are equitably tolled. New York's Real Property Tax Law did not allow Plaintiffs to obtain surplus value pre-*Tyler*, *Tyler* changed their ability to obtain surplus value, and Plaintiffs immediately

attempted to obtain the surplus value of their foreclosed homes.  Thus, Plaintiffs should not be barred from the *opportunity* to obtain a remedy.

**C.      Plaintiffs do not have standing to seek either declaratory or injunctive relief.**

Plaintiffs do not have standing to seek declaratory and injunctive relief as to N.Y. Real Property Tax Law §§1136(2)(D) and 1136(3).  To have standing, plaintiffs must show that there is an injury in fact, causal connection, and redressability.  Here, Plaintiffs have not shown how New York's foreclosure process -- *not* Defendants' retention of surplus value -- injured them such that Plaintiffs can seek declaratory and injunctive relief.  As a result, the Court finds that Plaintiffs do not have standing to seek declaratory and injunctive relief as to §§11362(2)(D), 1136(3).

"'To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'"  *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021) (quotation omitted).  To satisfy the injury-in-fact requirement, plaintiffs must plausibly allege an injury that is "'concrete and particularized' and 'actual or imminent;'" it cannot be "'conjectural or hypothetical.'"  *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 158 (2014) (quotation omitted).  Injuries are particularized when they "'affect the plaintiff in a personal and individual way,'" and injuries are concrete when they are "real."  *Spokeo, Inc. v. Robins,* 578 U.S. 330, 339-40 (2016) (quotation omitted).  When "plaintiffs seek injunctive or declaratory relief, they 'cannot rely on past injury to satisfy the injury requirement[.]  [They] must show a likelihood that [they] will be injured in the future.'"  *Dorce*, 2 F.4th at 95 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

Working backwards, Plaintiffs' secondary argument posits a speculative harm. (Pl. Response Br., Dkt. 102, at pg. 27). In their Amended Complaint, Plaintiffs allege that they, and those similarly situated, "have been and will be deterred from acquiring property in the future because of the unconstitutional risks posed by the retention of foreclosure surplus[.]" (Amended Complaint, Dkt. 75, pg. 29, at ¶159). Yet Plaintiffs "do not allege any facts to show that they own, plan to purchase, or have been deterred from purchasing any additional property," so Plaintiffs have not plausibly alleged that they "will be harmed in the future." *Dorce*, 2 F.4th at 95 (affirming the District Court's finding that Plaintiffs do not have standing). Plaintiffs' contentions are far too speculative. Plaintiffs' allegations rely "on a highly attenuated chain of possibilities," which "does not satisfy the requirement that threatened injury must be certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (citations omitted) (finding no injury in fact). At bottom, the Amended Complaint fails to plausibly allege that there is a substantial risk of future injury. Therefore, Plaintiffs do not have standing to seek injunctive relief on this score. *See, e.g., Reid v. Metro One Loss Prevention Servs. Grp. (Guard Div. NY), Inc.*, No. 2:23-cv-6303 (NJC) (ARL), 2025 WL 2533377, at *6 (E.D.N.Y. Sept. 3, 2025) (finding no standing where the Amended Complaint failed to plausibly allege that the defendant continues to injure the plaintiff or that there was a substantial risk that future injury would occur).

Plaintiffs' first argument -- that Defendants' retention of surplus value is an ongoing harm -- does not change the conclusion. Plaintiffs request this Court enjoin N.Y. Real Property Tax Law §§1136(2)(D) and 1136(3) and declare those statutes unconstitutional. *See* (Amended Complaint, Dkt. 75, pg. 28-29, at ¶156-159). However, those statutes establish New York's foreclosure process. N.Y. Real Prop. Tax Law §§ 1136(2)(D), (3). They have nothing to do with Defendants' retention of surplus value. *Compare* § 1136 (detailing New York's foreclosure

process) *with* § 1196 (detailing New York's determination of the existence of surplus value). Put differently, Plaintiffs "are unable to establish a 'real or immediate threat' of [being] injur[ed]" by New York's foreclosure process. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).

**D.      Plaintiffs Merckx and Sweeney, who are executors of estates, do not have capacity to sue because the persons who were harmed died before the harm occurred.**

The Court finds that Plaintiffs Merckx and Sweeney do not have capacity to sue and should be dismissed from this action. Under New York law -- which is applicable here -- an estate's personal representative can only bring a claim against a defendant if the decedent could have maintained the claim. In short, the claim must have existed before the decedent died. Here, the legal harm (the retention of surplus value) did not exist before Ronald Merckx and Mary Pedano died. As a result, neither of those plaintiffs has capacity to sue.

Capacity and Standing are separate doctrines. "'Standing' is an element of the larger question of 'justiciability'" while "'Capacity,' in contrast, concerns a litigant's power to appear and bring its grievance before the Court." *Community Bd. 7 v. Schaffer*, 84 N.Y.2d 148, 154-55 (N.Y. 1994) (citations omitted). "Capacity, or the lack thereof, sometimes depends purely upon a litigant's status." *Id.* at 155.

Plaintiffs Merckx and Sweeney do not have capacity to sue. Capacity to sue for individuals in a representative capacity is determined by "the law of the state where the court is located[.]" Fed. R. Civ. P. 17(b)(3). Under New York law, "'any action, other than an action for injury to person or property, may be maintained by and against a personal representative in all cases and in such manner as such action *might have been maintained by* or against his decedent.'" *Estate of Devins v. Oneida Cnty.*, No. 6:21-CV-0802 (GTS/ATB), 2022 WL 4549228, at *20

(N.D.N.Y. Sept. 29, 2022) (quoting N.Y. Est. Pow. & Trst. Law §11-3-1) (emphasis added).  Put differently, "personal representatives" have "the authority to bring causes of action that were viable at the time of" the decedent's death "but not claims that arose after" their "death."  *Estate of Devins*, 2022 WL 4549228, at \*21.  Here, Rensselaer County foreclosed on the Merckx's property, Ronald Merckx died, and then Rensselaer County sold the property and retained the surplus monies.  (Amended Complaint, Dkt. 78, pg. 5, at ¶¶13-17).  Likewise, Mary Pedano died on April 22, 2013, the City of Buffalo sold the Pedano Property in October 2019, and then it retained the surplus money.  (*Id.*, pg. 9, at ¶¶49-50).  In legal terms, the harm occurred when Rensselaer County and the City of Buffalo "received (and began to 'retain') the money from the sale of the property[.]"  *Sikorsky*, 136 F.4th at 62 .  So the harm did not occur until *after* Ronald Merckx's and Mary Pedano's deaths.  Thus, the Takings Clause claim was not viable while either Ronald Merckx or Mary Pedano was alive.  And because it was not, neither Plaintiff Merckx nor Plaintiff Sweeny has capacity to sue in their capacities as executor.

Similarly, neither Plaintiff Merckx nor Plaintiff Sweeny has capacity to sue as heirs to the estate.  In New York, "individual beneficiaries of the decedent's estate, ha[ve] no independent right to maintain an independent cause of action for the recovery of estate property, as such a right belong[s] to the personal representative of the decedent's estate."  *Stallsworth v. Stallsworth*, 138 A.D.3d 1102, 1103 (N.Y. App. Div. 2d Dep't 2016) (citations omitted).  In capsule form, heirs have no capacity to sue for estate property.  And here, Plaintiffs Merckx and Sweeny are suing for money that purportedly belongs to the Estate -- which is estate property.  Therefore, neither Plaintiff has capacity to sue in their capacities as heirs.

Neither analyses extend to Plaintiff Carr because she has capacity to sue as the Carr Estate Administrator.  The City of Buffalo sold the Carr property and retained the surplus value

*before* Carolyn Carr died.  (Amended Complaint, Dkt. 75, pg. 10, at ¶¶56-60).  So the harm occurred before she died.  And because it did, Plaintiff Carr can properly bring an action against the City of Buffalo. *See Schoeps v. Museum of Modern Art,* 594 F. Supp. 2d 461, 466 (S.D.N.Y. 2009) ("[U]nder New York law, a cause of action possessed by the decedent at the time of his or her death may be brought subsequently by a representative of the decedent only if the plaintiff has been appointed personal representative of the decedent's estate....")

### E.      Defendants' notice-of-claim defense fails but Plaintiffs' state law claims are dismissed.

The Court analyzes Defendants' notice-of-claim defense and Plaintiffs' state constitutional claims.  State law claims brought in federal court are subject to state procedural rules, while federal claims brough in federal court are not.  Here, Defendants raise a notice-of-claim defense, which is a state procedural rule, against Plaintiffs' state and federal law claims.  The Court finds that Plaintiffs' federal law claims survive that defense, but their state law claims do not.

"'State claims brought under state law in federal court are subject to state procedural rules.'"  *Est. of Devins*, 2022 WL 4549228, at \*11 (quoting *Henneberger v. Cnty.. of Nassau*, 465 F. Supp. 2d 176, 197 (E.D.N.Y. 2006) (citing *Felder v. Casey*, 487 U.S. 131, 141 (1988)).  New York State requires notices of claims when plaintiffs bring an action against a county.  *See* N.Y. Cnty. L. §52; N.Y. Gen. Mun. L. § 50(e)(1)(a); *see also Hamilton v. Cnty. of Onondaga, New York*, No. 15-cv-01333 (BKS/TWD), 2018 WL 4554496, at \*16 (N.D.N.Y. Sept. 21, 2018).  "'Notice of claim requirements are construed strictly by New York state courts.  Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of

action.'" *Rabadi v. City of Yonkers,* No. 21CV1258 (VB), 2022 WL 889734, at *8 (S.D.N.Y. Mar. 25, 2022) (quotation omitted).

Defendants' notice-of-claim defense does not apply to Plaintiffs' Federal claims.  The Supremacy Clause prevents state-notice-of-claims rules from applying to §1983 claims.  *See Felder*, 487 U.S. at 151 ("In a State that demands compliance with" a notice of claim "statute before a § 1983 action may be brought or maintained in its courts, the outcome of federal civil rights litigation will frequently and predictably depend on whether it is brought in state or federal court.  Thus, the very notions of federalism upon which respondents rely dictate that the State's outcome-determinative law must give way when a party asserts a federal right in state court.").  Here, Plaintiffs' vehicle for their Takings Clause and Excessive Fines Clause claims is 42 U.S.C. § 1983.  *See* (Amended Complaint, Dkt. 75, at pg. 23, 26).  So New York State's notice-of-claim rules do not apply to these constitutional claims.  *See, e.g., Roland v. City of New York*, No. 20-CV-05392 (TMR), 2024 WL 2832691, at *11 (S.D.N.Y. June 3, 2024) (dismissing only the state law claims because the plaintiffs failed to comply with New York State's notice-of-claim requirements).

Plaintiffs' state law unjust enrichment claims are subject to New York's notice-of-claim rules.  Defendants also argue that their notice-of-claim defense bars Plaintiffs' unjust enrichment claim.[8]  Defendants are correct.  Read plainly, County Law §52 requires notice of claim for equitable claims.  N.Y. Cnty. L. §52 ("any  claim . . . for damages arising at law or in equity . . . shall be commenced pursuant to . . . [§50-i] of the general municipal law."); N.Y. Gen. Mun. §50-i ("No action or special proceeding shall be prosecuted or maintained against a . . .  county

---

[8] *See* (Rensselaer MTD, Dkt. 121, at pgs. 10-12) (raising the notice-of-claim affirmative defense); (Cattaraugus MTD, Dkt. 4-5, at pgs. 4-5) (same); (Buffalo MTD., Dkt. 94-2, at pg. 3) (same).  Port Jervis did not raise this argument.  *See generally* (Port Jervis MTD, Dkt. 95-13).

. . . unless, (a) a notice of claim shall have been made and served upon the city, county, town, village, fire district or school district in compliance with [§50-e] of this article"). Unjust enrichment is an equitable claim. *See Cooper Crouse-Hinds, LLC v. City of Syracuse, New York*, No. 16-CV-1201 (MAD/ATB), 2018 WL 840056, at *10 (N.D.N.Y. Feb. 12, 2018) (applying County Law § 52's notice-of-claim requirement to the plaintiff's unjust enrichment claim). But Plaintiffs do not allege that they complied with County Law §52's notice-of-claim requirement. *See generally* (Amended Complaint, Dkt. 75); *see also Henneberger v. Cnty. of Nassau*, 465 F. Supp. 2d 176, 198 (E.D.N.Y. 2006) ("The plaintiffs bear the burden of demonstrating compliance with the notice of claim requirement" which requires "a plaintiff [to] plead in the complaint that: (1) the notice of claim was served; (2) at least thirty days has elapsed since the notice of claim was filed and before the complaint was filed; and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim."). As a result, Defendants' notice-of-claim defense bars Plaintiffs' unjust enrichment claim.

This reasoning extends to Plaintiffs' inverse condemnation, equitable accounting, and money had and received claims. Both inverse condemnation and equitable accounting are equitable claims. *See Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 784 (N.Y. 2012) ("'Inverse condemnation' . . . as used by New York courts," is "an equitable remedy"); *Leveraged Leasing Admin. Corp. v. PacifiCorp Cap., Inc.,* 87 F.3d 44, 49 (2d Cir. 1996) ("to sustain an equitable action for accounting under New York law, a plaintiff must show either a fiduciary or confidential relationship with the defendant"); *Wood v. Inc. Vill. of Patchogue of New York*, 311 F. Supp. 2d 344, 361 (E.D.N.Y. 2004) ("A cause of action for 'monies had and received' is an equitable claim similar in theory to unjust enrichment."). Because these claims are equitable claims, Plaintiffs needed to comply with New York's notice-of-claim process. *See* N.Y. Cnty. L.

§52; N.Y. Gen. Mun. §50-i.  But Plaintiffs do not allege that they complied with this process. The Court, therefore, holds that Plaintiffs' inverse condemnation, equitable accounting, and money had and received claims are barred.

Plaintiffs' counter argument on this score is unpersuasive.  Plaintiffs argue that their failure to follow the notice-of-claim requirements should be excused because the public interest exception applies to their cases.  Not so.  "[T]he public interest exception does not apply when plaintiffs are seeking money damages for the sole purpose of redressing plaintiffs' individual injuries."  *Atkins v. Cnty. of Orange*, 251 F. Supp. 2d 1225, 1235 (S.D.N.Y. 2003) (collecting cases).  "Here, plaintiffs are solely seeking redress for their individual injuries and while plaintiffs' recovery might have an effect on" Defendants' handling of surplus proceedings "such an effect would" not "be of any greater value to the public than any other award to civil rights plaintiffs."  *Id*. (citation omitted).  In sum, Plaintiffs' unjust enrichment claims do not fall into the public interest exception.  So those claims must be dismissed.

Plaintiffs' New York State Constitution claims must also be dismissed.  "[T]he New York constitution provides for a private right of action only where remedies are otherwise unavailable under common law or section 1983."  *Farina v. Metro. Transportation Auth*., 409 F. Supp. 3d 173, 212 (S.D.N.Y. 2019) (citations omitted).  Here, that is not the case. Plaintiffs have a claim under the Federal Constitution.  More to the point, "[n]either the [Amended] Complaint nor plaintiffs' motion papers suggest any reason why the disposition of an [E]xcessive [F]ines or [Takings] claim would be decided differently under the New York Constitution than under the U.S. Constitution."  *Id.* (citation omitted); *see also* (Amended Complaint, Dkt. 75, pg. 26, at ¶139) ("The guarantees of Article I, Section 7 of the New York Constitution are generally coextensive with the Takings Clause of the United States Constitution."); (Amended Complaint,

Dkt. 75, pg. 28, at ¶ 153) ("New York's Excessive Fines Clause, N.Y. Const. Article I § 5, requires the same analysis as the federal clause and provides no greater protection." (internal citations omitted)).  In consequence, Plaintiffs' New York State Constitution claims must be dismissed.

To recap, the Court finds that Plaintiffs' (1) Takings Clause and Excessive Fines Clause claims are not beholden to New York State's notice-of-claim requirements, thus those claims survive; (2) state law unjust enrichment claims *are* beholden to New York State's notice-of-claim requirements, therefore those claims *do not* survive; and (3) New York State Takings Clause and Excessive Clause claims must be dismissed because there are alternative remedies.

**F.      Venue is proper in the Northern District of New York.**

The Northern District of New York is the proper venue for this case.  Section 1391 of Title 28 of the United States Code generally governs "the venue of all civil actions brought in district courts of the United States[.]"  28 U.S.C. § 1391(a)(1).  Under this statute, venue is proper in "a judicial district in which *any* defendant resides, if all defendants are residents of the State in which the district is located[.]"  28 U.S.C. 1391(b)(1).  Since Defendant Rensselaer County is located in the Northern District of New York; this District is the proper venue for this case.

**G.      The Court rejects Defendants' Rule 19 argument because Defendants did not comply with Rule 19(c), which requires Defendants to state why they did not add the allegedly indispensable parties.**

The Court rejects Defendants' Rule 19 argument.  In short, Rules 19(a) and 19(b) require the joinder of necessary and indispensable parties.  Rule 19(c) requires parties complaining about their adversary's failure to comply with Rules 19(a) and 19(b) to identify the absent parties and

explain why the complaining party did not join the absent parties.  Here, Defendants complain about Plaintiffs' failure to comply with Rules 19(a) and 19(b), yet Defendants do not identify why they did not join the necessary and indispensable parties.  As a result, the Court rejects Defendants' Rule 19 argument.

"Fed. R. Civ. P. 19 sets forth a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party." *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000) (Sotomayor, J.).  At step one, courts "must determine whether an absent party belongs in the suit, *i.e.,* whether the party qualifies as a necessary party under Rule 19(a)." *Id.* (citation omitted).  "[I]f the court makes a threshold determination that a party is necessary under Rule 19(a), and . . . joinder of the absent party is not feasible for jurisdictional . . . reasons, the court must" move to step two, where it "determine[s] whether the party is 'indispensable' under Rule 19(b)." *Vision en Analisis y Estrategia, S.A. v. Andersen*, 662 F. App'x 29, 31–32 (2d Cir. 2016) (summary order) (quotation omitted)).

As to the first prong, an absent party is *necessary* if (1) "in that [party's] absence, the court cannot accord complete relief among existing parties; or" (2) the absent party "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(1)(A), (1)(B)(i)-(ii).

As to the second prong, courts consider the Rule 19(b) factors to determine if an absent party is indispensable.  Specifically, courts consider: "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; the extent to which any

prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; whether a judgment rendered in the person's absence would be adequate; and whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder."  Fed. R. Civ. P. 19(b)(1)-(b)(4) (formatting altered).

The Court rejects Defendants' Rule 19 claim because Defendants failed to comply with Rule 19(c).  "A party that complains of failure of the adversary to join an indispensable party is required by Rule 19[(c)] to explain why the objecting party did not itself bring the indispensable party into the litigation." *Tae H. Kim v. Ji Sung Yoo*, 776 F. App'x 16, 20 (2d Cir. 2019) (summary order) (citing Fed. R. Civ. P. 19(c)).  Here, Defendants identified the absent parties – lienholders -- they believe are necessary to this litigation.[9]  But Defendants, the complaining parties, have failed to identify why they did not join these absent parties in the litigation.  *See Tae H. Kim*, 776 F. App'x at 20 (affirming the District Court's rejection of Defendant's "unpersuasive" Rule 19 claim).  Worse yet, "[D]efendants do not offer any arguments" in their original motion or global reply "as to how or why" they are "unable to . . . join[]" the lienholders "to Plaintiff[s'] case." *Gondeck v. JPMorgan Chase Bank, N.A.*, 705 F. Supp. 3d 64, 71 (N.D.N.Y. 2023) (cleaned up) (rejecting Defendants' Rule 19 argument).  Defendants cannot cry foul at Plaintiffs' failure to comply with Rule 19 and then fail to comply with Rule 19.  In consequence, the Court rejects Defendants' Rule 19 argument.

* * *

The Court also rejects the argument that New York State is a necessary party because "New York State is no more a necessary party to this suit than Minnesota was there." *Cavaluzzi,*

---

[9] (Rensselaer MTD, Dkt. 121, at pgs. 20-24); (Cattaraugus MTD, Dkt. 93-3, at pg. 9); (Port Jervis MTD, Dkt. 95-13, at pg. 16-19).

2025 WL 1347142, at *9 (rejecting Defendants' argument that New York State is a necessary party and explaining why New York State is not a required party).

* * *

In sum, the Court rejects Defendants' Rule 19 argument because Defendants failed to comply with Rule 19 and New York State is not a necessary party.

## H.        This case does not raise a political question.

The Court rejects Defendants' political question doctrine defense.  To determine whether a case presents a political question, courts examine six factors.  Applying those factors here, the Court finds that this a run-of-the-mill property case that does not present a political question.  Therefore, the Court rejects Defendants' political question defense.

"The political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 230 (1986).  To determine if the political question doctrine applies to cases, courts look to six factors.  *See, e.g., Vieth v. Jubelirer*, 541 U.S. 267, 277 (2004) (*per curiam*).  These six factors are whether:

1.  a textually demonstrable constitutional commitment of the issue to a coordinate political department; or

2.  a lack of judicially discoverable and manageable standards for resolving it; or

3.  the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or

4.  the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or

5.  an unusual need for unquestioning adherence to a political decision already made; or

6.  the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker v. Carr*, 369 U.S. 186, 217 (1962).  "These tests are probably listed in descending order of both importance and certainty."  *Vieth*, 541 U.S. at 277.  "Unless one of these formulations is *inextricable* from the case at bar, there should be no dismissal for non-justiciability on the ground of a political question's presence."  *Baker*, 369 U.S. at 217 (emphasis added).

Examining the *Baker* factors, the Court holds that this case does not present a political question.

First, there is no textual commitment of this issue to the political branches.  The Supreme Court has long adjudicated surplus value cases.  *See, e.g., Lawton*, 110 U.S. at 149-50 (invalidating a federal law, in 1884, that permitted the federal government's retention of surplus money obtained from property it foreclosed on); *Tyler*, 598 U.S. at 646 (invalidating a Minnesota law, in 2023, that permitted a county's retention of surplus money obtained from property it foreclosed on)

Second, there is no lack of judicially discoverable and manageable standards for resolving the issue.  Indeed, courts have addressed this issue as it has arisen.  *See, e.g., Sikorsky*, 136 F. 4th at 60-61 (finding that the plaintiff stated a claim under the Takings Clause); *Cavaluzzi v. County of Sullivan*, No. 23 Civ. 67 (PAE), 2024 WL 1347142, *8-10 (S.D.N.Y. Dec. 27, 2024) (same).

Addressing factors three and four, the Court neither needs to make any policy considerations to adjudicate this issue nor disrespect the political branches.  "'No policy underlying the political question doctrine suggests that'" legislatures or executives "'can decide the constitutionality of a statute; that is a decision for the courts.'"  *Zivotofsky ex rel. Zivotofsky v. Clinton,* 566 U.S. 189, 196–97 (2012) (quotation omitted).  True, there may be policy

- 33 -

considerations courts must address when addressing this issue, or any issue.  But the "resolution

of litigation challenging" an unconstitutional practice "cannot be evaded by courts because the

issues have political implications[.]"  *INS v. Chadha*, 462 U.S. 919, 943 (1983).  In fact "[i]t is

emphatically the province and duty of the judicial department to say what the law is."  *Marbury*

*v. Madison*, 1 Cranch 137, 177 (1803).

Fifth, there is no need for unquestioned adherence to a political decision already made.

"There is nothing in the text of Article 11 that suggests that the New York legislature,

improbably, believed its tax foreclosure scheme implicated political questions excluded from

judicial review."  *Cavaluzzi v. Cty. of Sullivan*, No. 23 Civ. 11067 (PAE), 2025 WL 1347142, at

*6 (S.D.N.Y. May 8, 2025) (rejecting Defendants' political question and explaining why

Defendants' political question doctrine defense is inapplicable).

Sixth, there is no potential for embarrassment.  This is a routine property dispute that

courts have long dealt with.  The Court will not dismiss the case for an argument that is

bordering on frivolous.[10]

To end, the Court applies the *Baker* factors and finds that none of them weigh in favor of

finding that this case presents a political question.  The Court, therefore, rejects this claim.

I.    **The doctrines of Res Judicata and Collateral Estoppel do not bar Plaintiffs' Takings claim.**

*Res Judicata*, or claim preclusion, "bars relitigation if '(1) the previous action involved an

adjudication on the merits; (2) the previous action involved the [same parties] or those in privity

---

[10] Understanding that the political question doctrine defense is frivolous, the parties do not properly brief the issue.  *See, e.g.,* (Dkt. 136-3, at pg. 8) (failing to apply the *Baker* factors).

with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.'" *Sikorsky*, 136 F.4th at 62 (quotation omitted). "New York courts, like federal courts, require a claim to be ripe for it to be justiciable, thereby avoiding 'mere hypothetical adjudications.'" *Id.* (quotation and other citations omitted). Here, the state court actions all ended in adjudications on the merits and those cases involved the same parties. So the only question is whether the claims were ripe. They were not. As previously noted, "the 'harm' at issue is the" Defendants' "*retention* of surplus equity." *Id.* (emphasis in original). So the harm Plaintiffs alleged occurred *after* the New York State Supreme Court's Judgment transferring title. Because the harm occurred after the Judgment, the claim was not ripe at the time of the judgment. *See id.* at 59, 62-63 (finding Sikorsky's Takings Clause claim not ripe where he initially brought a claim in 2017, brought a second claim in March 2021, but Defendants sold his property in June 2021). Because the claims were not ripe at the time of the Judgment, Plaintiffs, like Sikorsky, could not have asserted their claims in the prior action, and because they could not, claim preclusion does not bar Plaintiffs' Takings Clause claim.

"Collateral estoppel, or issue preclusion, 'bars a party from relitigating in a subsequent proceeding an issue clearly raised in a prior proceeding and decided against that party where the party to be precluded had a full and fair opportunity to contest the prior determination.'" *Johnson v. Watkins*, 101 F.3d 792, 794 (2d Cir. 1996) (quotation omitted). The party claiming issue preclusion must show two elements: "(1) 'there must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action' and (2) 'there must have been a full and fair opportunity to contest the decision now said to be controlling.'" *Id.* (quotation omitted). As already established, there was no full opportunity to litigate this issue at the foreclosure hearing because the issue was not ripe. *See Sikorsky*, 136 F.4th at 62-63. So

Defendants cannot plausibly argue that there has been a full and fair opportunity to address the surplus value issue.  In consequence, issue preclusion does not bar Plaintiffs' Takings Clause claim.

**J.**    ***Rooker-Feldman* does not apply because Plaintiffs are neither state-court losers complaining of injuries caused by state-court judgments nor are they inviting this Court to review and reject the state-court judgments.**

The Court rejects Defendants' *Rooker-Feldman* doctrine defense.  *Rooker-Feldman* bars a narrow set of cases if, *and only if*, the party arguing the Doctrine can establish four elements.  Here, Defendants cannot establish three of the four elements.  So the Court declines to abstain under *Rooker-Feldman*.

The *Rooker-Feldman* doctrine precludes "lower federal courts . . . from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam).  *Rooker-Feldman* bars an action only if "(1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." *Hunter v. McMahon*, 75 F.4th 62, 68 (2d Cir. 2023) (quotation omitted).  *Rooker-Feldman* is narrow.  The doctrine only applies to "'state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* (quotation omitted).  "'*Rooker-Feldman* is not simply preclusion by another name' but 'applies only in limited circumstances where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court.'" *Id.* (quotation omitted).

The Court can easily dispense with Defendants' *Rooker-Feldman* argument because Defendants lose on the first three elements.

- 36 -

*First*, Plaintiffs are not state-court losers.  Defendants cite *Hason v. Office of Professional Medical Conduct*, 314 F. Supp. 2d 241 (S.D.N.Y. 2004), for the proposition that, "'[i]f the precise claims raised in a state court proceeding are raised in the subsequent federal proceeding, *Rooker–Feldman* plainly will bar the action.'"  *Id.* at 247 (quotation omitted).  But Defendants needed to read the next sentence.  "[I]f an issue was 'never presented in the state court proceedings and the plaintiff did not have an opportunity to present [it] in those proceedings, [it is] not 'inextricably intertwined' and therefore not barred by *Rooker-Feldman*.'"  *Id.* (quotation omitted).  Here, Plaintiffs never raised their surplus-value Takings Clause claim.  They could not.  The issue was not ripe.  *Sikorsky*, 136 F.4th at 62-63.  As a result, Plaintiffs were not state-court losers.

*Second*, Plaintiffs are not complaining of injuries caused by a state-court judgment.  They are complaining about injuries caused by the municipality when the jurisdiction retained their surplus money.  *See Sikorsky*, 136 F.4th at 62.  True, the municipality's retention of the surplus money is a logical outgrowth traceable to the state-court judgment.  But that argument fails for two reasons.  First, the state-court judgment itself does not create the jurisdiction's retention of surplus money.  The state-court judgment only begins the process, which goes as follows: state court judgment → transfer of property to municipality → jurisdiction's sale of property to a third party for surplus money → jurisdiction's retention of surplus money.  Put differently, Defendants' argument is too attenuated.  *See, e.g., Dorce*, 608 F. Supp. 3d at 134 (S.D.N.Y. 2022) ("The second *Rooker-Feldman* requirement is not met, because the City Defendants' failure to return the plaintiffs' surplus equity, or else to compensate the plaintiffs therefor, was not caused by the state court foreclosure judgment, 'but by the City's decision to include the properties in the TPT Program and transfer them to a third party, and by the TPT Program's allegedly inadequate

mechanism for seeking compensation for the excess value of the property following foreclosure.'" *Id.* (citation omitted). The second issue with that argument is that surplus money is not the guaranteed outcome of the state-court judgment. Altogether, Plaintiffs are not complaining of injuries caused by a state-court judgment, they are complaining of injuries caused by the jurisdictions. Thus, *Rooker-Feldman*'s second element is not met.

*Third*, Plaintiffs are not asking this Court to review the state-court judgment. Plaintiffs do not challenge the transfer of their property. *See generally*, (Amended Complaint, Dkt. 75). What they are challenging is the jurisdiction's retention of surplus money. The state court judgment did not address this claim. *See Dorce*, 608 F. Supp. 3d at 134 (S.D.N.Y. 2022) (finding the third *Rooker-Feldman* element unmet because "[t]he state court judgment did not address whether the plaintiffs were compensated for their surplus equity or whether the City's seizure and retention of such equity would be unlawful." (citation omitted)). In short, *Rooker-Feldman*'s third element is not met.

To end, the Court finds that Defendants are unable to show that Plaintiffs' Amended Complaint fits the first three elements of *Rooker-Feldman*. Because Defendants cannot establish all four elements of the doctrine, this Court has not been stripped of jurisdiction under *Rooker-Feldman*. *See Sung Cho v. City of New York,* 910 F.3d 639, 646 (2d Cir. 2018) (noting that "all four requirements must be met in order for *Rooker-Feldman* to act as a jurisdictional bar"). To put a finer point on it, this Court rejects Defendants' *Rooker-Feldman* argument.

## IV. CONCLUSION

For ease, the Court recaps its decision. *First*, the Court holds that Plaintiffs have plausibly alleged a Takings Clause violation. *Second*, the Court equitably tolls the statute of

limitations to May 25, 2023, the day the Supreme Court decided *Tyler*.  *Third*, the Court holds that Plaintiffs do not have standing to seek declaratory and injunctive relief.  *Fourth*, the Court holds that Plaintiffs Merckx and Sweeney do not have capacity to sue.  *Fifth*, the Court rejects Defendants' notice-of-claim defense only as to Plaintiffs' federal law claims.  *Sixth*, the Court dismisses Plaintiffs' state law and state constitutional claims.  *Seventh*, the Court holds that the Northern District of New York is the proper venue for this action.  *Eighth*, the Court holds that the case does not need to be dismissed, under Fed. R. Civ. P. 12(b)(7), for failure to join necessary parties under Rule 19.  *Ninth*, the Court holds that this case does not present a political question.  *Tenth*, the Court holds that neither claim preclusion nor issue preclusion bars Plaintiffs' Takings Clause claim; and *Eleventh*, the Court holds that *Rooker-Feldman* does not strip this Court of jurisdiction.

Accordingly, the Court hereby

**ORDERS** that Defendants' motions to dismiss, *see* Dkt. Nos. 93, 94, 95 and 121 are **GRANTED in part and DENIED in part** for the above-stated reasons.  In sum, Plaintiffs Merckx and Sweeney are terminated from this action because they lack the capacity to sue; as for the other Plaintiffs, the only claims that remain in this action are as follows: Plaintiff Laraway's Takings Clause claim against Defendant Rensselaer County; Plaintiff Snashell's Takings Clause claim against Defendant Cattaraugus County; Plaintiffs Dotty Carr's and Arthur McDowell's Takings Clause claims against Defendant City of Buffalo; and Plaintiffs Chignard and Martine Noelizaire's Takings Clause claims against the Defendant City of Port Jervis; the statute of limitations for all such claims is equitably tolled until May 25, 2023; and the Court further

**ORDERS** that the Clerk of the Court shall unconsolidate the cases listed in Dkt. 126; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Katz for all further pretrial

matters.

**IT IS SO ORDERED**.

Dated: March 19, 2026
          Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge